■ SHELDON ACKLEY, Appellant, v NORMAN GOODMAN, Respondent.—Order of the Supreme Court, New York County (Martin Evans, J.), entered on or about October 16, 1986, which denied plaintiff's request for injunctive relief and declared section 513 of the Judiciary Law to be constitutional, is unanimously affirmed, without costs or disbursements.

Plaintiff commenced this action challenging the constitutionality of Judiciary Law § 513, claiming it required him to fill out a questionnaire, as a prospective juror, which contained inquiries unrelated to his qualifications as a juror and violative of his rights of liberty and privacy under the Fifth

and Fourteenth Amendments to the US Constitution and section 6 of article I of the NY Constitution.

Plaintiff has refused to answer, under threat of contempt proceedings, questions on New York County's juror qualification questionnaire which seek information about his spouse, marital status, prior last names used, educational background, employment, place of birth, and prior election registration. Plaintiff contends he should not be required to disclose such personal information to government officials who lack a rational or legitimate purpose in seeking to obtain the information.

Plaintiff has no constitutionally protected privacy right to nondisclosure of the information requested on the juror qualification questionnaire.

While not explicitly mentioned in the Federal Constitution, the right to privacy is a fundamental right guaranteed by the Constitution and, in fact is a right older than the Bill of Rights *(Griswold v Connecticut,* 381 US 479). However, the concept of privacy involves "at least two different kinds of interests. One is the individual interest in avoiding disclosure of personal matters, and another is the interest in independence in making certain kinds of important decisions" *(Whalen v Roe,* 429 US 589, 599-600).

In *Whalen (supra),* the Supreme Court upheld the constitutionality of a New York statute requiring disclosure by physicians to the Public Health Commissioner of the identity of patients who regularly received prescriptions for certain controlled drugs. The court found that public disclosure of the names was prohibited by the statute and that the State had a legitimate interest in controlling the distribution of dangerous drugs. It distinguished the required disclosure to State employees under a duty to keep it confidential from public disclosure. The former was held to raise no more substantial constitutional question than many widely accepted reporting requirements *(supra,* at 602).

Section 509 (a) of the Judiciary Law states that the juror qualification questionnaires are confidential and may not be disclosed except to the county jury board as permitted by the Appellate Division.

The information requested in the challenged questions here, moreover, is certainly less intrusive than that required in *Whalen (supra).* Much of the data is already publicly recorded with various agencies and public entities. Although it is undoubtedly "personal" information, the nature of the ques-

tions makes any invasion of plaintiff's privacy minimal at best. "State legislation which has some effect on individual liberty or privacy may not be held unconstitutional simply because a court finds it unnecessary, in whole or in part." *(Whalen v Roe, supra,* at 597.)

Additionally, section 513 of the Judiciary Law requires information in the juror questionnaire which is rationally related to the purpose of the statute. "It is also presumed that the legislative body has investigated and found the existence of a situation showing or indicating the need for or desirability of the ordinance, and, if any state of facts known or to be assumed, justifies the disputed measure, this court's power of inquiry ends. Thus, as to reasonableness, plaintiffs in order to succeed have the burden of showing that 'no reasonable basis at all' existed for the challenged portions of the ordinance" *(Lighthouse Shores v Town of Islip,* 41 NY2d 7, 11-12).

Addressing plaintiff's objections *seriatim,* the question seeking any other last name ever used by the prospective juror is justified by defendant to verify if the prospective juror has a criminal record, since a prospective juror must "[n]ot have been convicted of a felony" (Judiciary Law § 510 [4]). In addition, a person is disqualified from serving on a jury more than once every two years (Judiciary Law § 511 [5]), and the County Clerk is charged with enforcing this provision.

The inquiry as to whether prospective jurors registered for the last election, and where they lived at that time, is asked since the residency standards for voting are essentially the same as for jury service. Thus, if a juror has a New York County residence but has a principal residence elsewhere where he has registered to vote, he or she would not qualify as a juror in New York County.

Those questions which seek business firm, address and length at present job, as well as marital status, spouse's name, telephone number and occupation, are useful in determining whether a prospective juror qualifies for an exemption from jury duty. Thus, persons in certain businesses and professions can qualify for such exemption (Judiciary Law § 512), as can a person residing in the same household with a child or children under 16, if he or she has the principal responsibility for the personal care and supervision of such child or children during a majority of the nonschool hours between 8:00 A.M. and 6:00 P.M. (Judiciary Law § 512 [7]).

The question as to the prospective juror's educational level is intended to help determine the individual's ability to read and write English (Judiciary Law § 510 [5]).

Finally, the question seeking the place of birth is justified as a verification of United States citizenship, since the County Clerk will check to see if those individuals who indicate that they were not born in the United States have been naturalized.

The questionnaire is the primary method of determining juror qualification. As noted by the Office of Court Administration in support of the statute (as added by L 1977, ch 316, § 2, as amended by L 1983, ch 474, § 2): "The proposed new article makes uniform throughout the State the procedure for jury selection, eliminates numerous obsolete and time-consuming clerical chores presently required by law, and permits the use of modern office and electronic equipment in the juror qualification process. The measure is designed also to make jury service more convenient to the public, and less a fiscal burden on the State treasury to administer. For example, prospective jurors can be qualified or excused by mail, rather than through personal interviews at court houses as presently required (§§ 516, 517). Personal interviews are costly and are frequently an unnecessary inconvenience to prospective jurors, particularly to mothers of small children." (Mem of Off of Ct Admin, 1977, McKinney's Session Laws of NY, at 2617).

Clearly, there is a valid governmental interest in propounding the questions complained of which outweighs any legitimate privacy interests plaintiff may possess, and the questionnaire, including the objected-to portions, is reasonable and rationally intended to fulfill the purposes of the statute. Concur—Sandler, J. P., Sullivan, Carro, Asch and Smith, JJ.