OPINION OF THE COURT
Joseph Harris, J.
In the wake of widely publicized events involving corruption of public officials in New York City and elsewhere, the Legislature, in an effort to restore public trust and confidence in their government and the civil servants employed thereby, enacted the Ethics in Government Act (L 1987, ch 813) which was signed into law on August 7, 1987.
Among other things, the Ethics in Government Act contained comprehensive financial disclosure requirements embodied in Public Officers Law § 73-a, known as the Financial Disclosure Law.[1]
Public Officers Law § 73-a (Financial Disclosure Law) requires certain State officers and employees to file with the New York State Ethics Commission an ”Annual Statement of Financial Disclosure” detailing, inter alia, their business and social affiliations, sources of income, financial investments, and financial liabilities. Upon receipt of an employee’s financial disclosure statement the Ethics Commission is entrusted with the obligation of reviewing same with an eye towards ascertaining compliance with the Financial Disclosure Law, and whether or not the employee has violated the State Ethics Law. (Executive Law § 94 [10].) The Ethics Commission is required to make the financial disclosure statements filed with the Commission available for public inspection. (Executive Law § 94 [17].)
*352 A willful failure to file, or a filing of a false statement of financial disclosure, is punishable by a civil penalty of up to $10,000. In lieu of the imposition of civil penalties, violations may be subject to criminal prosecution for a class A misdemeanor. Additionally, administrative disciplinary action may be taken against violators by the appointing authority as otherwise provided by law. (Public Officers Law § 73-a [4].)
Plaintiff is a senior attorney with the New York State Department of Social Services, earning in excess of $30,000 annually and has further been designated by his employing department as a policy makér.[2] Accordingly, petitioner was required to file a financial disclosure statement with the Ethics Commission on or before May 15, 1989.[3]
On April 4, 1989, plaintiff filed an application, pursuant to Executive Law § 94 (9) (k), for a total exemption from the filing requirements of section 73-a of the Public Officers Law. On or about May 1, 1989, plaintiff’s application for an exemption was rejected. Due to petitioner’s designation as a "policy maker”, by his appointing agency, petitioner was ineligible to apply for a complete exemption from filing. (See, Executive Law § 94 [9] [k].) In this regard, section 94 (9) (k) of the Executive Law excludes policy makers from those entitled to apply for such an exemption. Only employees or officers who must file solely by reason of salary are eligible to apply for such an exemption from filing. (See, n 5.)
Plaintiff commenced the instant action for a declaratory judgment, seeking a declaration that all or some of the provisions of Public Officers Law § 73-a (Financial Disclosure Law) are unconstitutional and violative of both the United States and New York State Constitutions, and an order permanently enjoining defendant from enforcing same. Initially plaintiff moved for a preliminary injunction barring enforcement of section 73-a of the Public Officers Law pending resolution of the action. Defendant cross-moved for dismissal of the complaint pursuant to CPLR 3211, and for summary judgment pursuant to CPLR 3212.[4]
*353 Plaintiff contends that the public disclosure aspect of the Ethics in Government Act (Public Officers Law § 73-a) is, on its face, violative of a myriad constitutional proscriptions, including, inter alia, those embodied in the First, Fourth, Fifth and Fourteenth Amendments of the US Constitution and their counterparts in the NY Constitution, including freedom of association, protection from unlawful searches and seizures, equal protection of the laws, due process, and the privilege against self-incrimination.
THE LAW
Plaintiff’s substantive claims regarding the constitutionality of the Financial Disclosure Law must be weighed against the police power of the State. It is a basic fundamental rule that there is a presumption in favor of the constitutionality of a legislative enactment, and every intendment is in favor of a statute’s validity. A heavy burden of demonstrating unconstitutionality beyond a reasonable doubt rests upon the one who claims it. (Wein v Beame, 43 NY2d 326, 331; Hotel Dorset Co. v Trust for Cultural Resources, 46 NY2d 358.) Moreover, there is a further presumption, long recognized by the Court of Appeals, that the Legislature has investigated and found facts necessary to support the legislation as well as the existence of a situation showing or indicating its need or desirability. (Supra, at 370.) It is within the context of these general principles governing the analysis of constitutional challenges to legislative enactments, that the court considers plaintiff’s constitutional attack on New York’s Financial Disclosure Law (Public Officers Law § 73-a).
RIGHT TO PRIVACY
Plaintiff initially contends that the Financial Disclosure Law is an unconstitutional invasion of privacy. Recent cases decided by both the United States Supreme Court and the New York State Court of Appeals have given recognition to a right of privacy emanating from the Fourteenth Amendment *354 of the US Constitution. In Whalen v Roe (429 US 589, 599), the Supreme Court upheld a New York State statute authorizing the State to record the names and addresses of patients who had received prescriptions for certain drugs, but recognized that within the "confidentiality” branch of the right to privacy, individuals have a protective interest in "avoiding disclosure of personal matters”.[5] (See also, Nixon v Administrator of Gen. Servs., 433 US 425, 465 [where the Supreme Court upheld an act providing for the screening of former President Nixon’s presidential materials to segregate official documents of public significance from personal documents to be returned to Mr. Nixon, but recognized that government officials have a legitimate expectation of privacy in personal communications]; Hunter v City of New York, 58 AD2d 136, affd on opn below 44 NY2d 708 [where the Court of Appeals upheld as constitutional the filing requirements of Local Laws, 1975, No. 1 of the City of New York, which required, inter alia, certain city officers and employees in policy-making positions and/or who earned in excess of $25,000 annually to file financial disclosure statements, but expressly recognized the need to give due consideration to the privacy interests of governmental employees].)
It is clear that the mere fact that plaintiff is a governmental employee does not mean he is completely devoid of constitutional protection. (Nixon v Administrator of Gen. Servs., 433 US 425, 455, supra; Kaplan v Board of Educ., 759 F2d 256 [2d Cir 1985].) However, it is clear also that in matters of financial disclosure, government employees and public officials, due to the significant governmental interest in ensuring the integrity and honesty of government and in fostering public confidence in same, have a diminished expectation of privacy as compared to their counterparts in private industry. (Kaplan v Board of Educ., supra.)
To adequately safeguard those privacy interests implicated *355 by public disclosure laws, the New York State Court of Appeals and the United States Court of Appeals for the Second Circuit have adopted a balancing test by which the rights and interests of government employees, as citizens, are weighed against the rights and interests of the government as employer. (Evans v Carey, 40 NY2d 1008; Hunter v City of New York, 44 NY2d 708, supra; Barry v City of New York, 712 F2d 1554; Kaplan v Board of Educ., supra.) These decisions are dispositive of plaintiff’s claimed infringement of his privacy rights.
In Barry v City of New York (supra), the Court of Appeals for the Second Circuit upheld Local Laws, 1979, No. 48 of the City of New York an enactment substantially similar to Public Officers Law § 73-a, which required financial disclosure of most elected and appointed officials, candidates for city office and all civil service employees earning $30,000 or greater annually. In so doing the court stated that "the statute as a whole plainly furthers a substantial, possibly even compelling, state interest”, the purpose of the statute being "to deter corruption and conflicts of interest among City officers and employees, and to enhance public confidence in the integrity of its government.” (Barry v City of New York, supra, at 1560.) In Kaplan v Board of Educ. (supra), the United States Court of Appeals, Second Circuit, relying on its decision in Barry, upheld the constitutionality of a regulation of the Chancellor of the New York City Board of Education which required, inter alia, that elected members of Community School Boards file financial disclosure forms.
In Evans v Carey (40 NY2d 1008, supra), the Court of Appeals upheld the constitutionality of Executive Order No. 10 of the State of New York (9 NYCRR 3.10), which was a directive that imposed financial disclosure requirements substantially similar to those imposed by Public Officers Law § 73-a, on certain employees of the Executive Branch. Both the New York State Court of Appeals and the United States Court of Appeals for the Second Circuit have consistently held that "whatever constitutionally protected privacy interests may be affected by the disclosure requirements [of financial disclosure laws, they] are outweighed by the governmental interest in avoiding corruption and conflicts of interest”. (Matter of Board of Educ. v New York State Pub. Employment Relations Bd., 147 AD2d 70, 74.)
Unquestionably, Public Officers Law § 73-a furthers the same compelling State interest in deterring governmental *356 corruption and in fostering public confidence in our system of government as was furthered by Executive Order No. 10 (see, Evans v Carey, supra)[6] and Local Laws Nos. 1 and 48. (See, Hunter v City of New York, supra, and Barry v City of New York, supra, respectively.)
Moreover, contrary to plaintiffs contention, the disclosure requirements of section 73-a of the Public Officers Law are no more onerous than those imposed by Executive Order No. 10, at issue in the Evans case (supra), and New York City’s Local Law No. 48, upheld by court in Barry (supra). Like Public Officers Law § 73-a, both provisions required financial disclosure by both the employee and the employee’s spouse. (See, Slevin v City of New York, 551 F Supp 917; 9 NYCRR 3.10.) In this respect, the court in Barry specifically found that the filing of information regarding spouses was necessary to ensure the effectiveness of the law. (Barry v City of New York, 712 F2d 1554, supra.) The mere fact that section 73-a of the Public Officers Law also requires filing of information regarding a reporting person’s unemancipated children is of no constitutional moment. The contours of corruptive practices and conflicts of interest are frequently impossible to discern until well after the fact. Moreover, practical experience has borne out that to underestimate the creative artifices and ingenuity of corrupt influences in these situations would be folly. Certainly it is not unreasonable to conclude that absent a provision requiring disclosure by an employee’s immediate family, disclosure might easily be evaded by the simple expedient of transferring title to improper payments, or the like, to members of one’s family. Moreover, the rule of reason dictates that the interests of one’s spouse and children are just as likely to give rise to a loss of impartiality as one’s own interest. There is most often a commonality of interest between family members. (Hunter v City of New York, 88 Misc 2d 562, 574, affd in part 58 AD2d 136, affd 44 NY2d 708, supra.)
Even in the absence of any empirical data to support the inclusion of nonemployee family members within the reporting requirements of the statute, a court is not empowered to invalidate as unconstitutional, legislation impacting on individual liberty or privacy, merely because it personally finds *357 the legislation unnecessary in whole or in part. (Whalen v Roe, 429 US 589, 597, supra.) Moreover, it cannot be said that the inclusion of an employee’s nuclear family within the reporting requirements of the Financial Disclosure Law is not reasonably and substantially related to the governmental interests at stake. Legal theory is no substitute for reality and common sense.
One aspect of the Ethics in Government Act which merits discussion is the public inspection provisions of the legislation. In furtherance of promoting openness in government, and instilling in the public, confidence in the honesty and integrity of those governmental employees, officers and elected officials charged with the public trust, Executive Law § 94 (17), mandates that the Ethics Commission make available for public inspection, among other documents, the annual statements of financial disclosure filed pursuant to Public Officers Law § 73-a. In addressing the public inspection aspect of financial disclosure legislation, the Court of Appeals in Rapp v Carey (44 NY2d 157, 161-162) explained that "[t]he issue is actually one of due process of law, since privacy is but a subcategory of liberty, which may not be denied without due process. The test, then, is whether there has been ' "protection of the individual against arbitrary action” ’ ”. Consequently, so as not to offend the requirements of due process, the Court of Appeals has mandated that financial disclosure legislation afford those required to report, a mechanism to delete from public disclosure, personal financial information unrelated to the performance of the public servant’s duties, the disclosure of which serves no useful purpose. (Hunter v City of New York, 44 NY2d 708, supra.)[7]
While the court is sensitive to the fact that public disclosure of personal financial information may be embarrassing and intrusive, it is clear that the statute’s privacy mechanism adequately safeguards plaintiff’s constitutionally protected privacy interest. (Barry v City of New York, 712 F2d 1554, supra.)
*358 As previously explained, an employee filing a financial disclosure statement may make a claim of privacy with respect to any item of information sought, by filing a request for deletion with the Public Advisory Council and establishing "that the information which would otherwise be [required to be made] available for public inspection will have no material bearing on the discharge of the reporting person’s official duties.” (Executive Law § 94 [18] [h] [1].) Additionally, a person subject to reporting may also file for an exemption from any requirement to report one or more items of information which pertain to such person’s spouse or unemancipated child providing it is established that the item sought to be exempted "will have no material bearing on the discharge of the reporting person’s official duties.” (Executive Law §94 [18] [h] [2].) Finally, persons subject to disclosure solely on the basis of their annual salary level may apply to the Ethics Commission for an exemption from the requirement that a financial disclosure statement be filed, upon a showing that the public interest does not require disclosure and the applicant’s duties do not involve the negotiation, authorization or approval of:
"(i) contracts, leases, franchises, revocable consents, concessions, variances, special permits, or licenses as defined in section seventy-three of the public officers law;
"(ii) the purchase, sale, rental or lease of real property, goods or services, or a contract therefor;
"(iii) the obtaining of grants of money or loans; or "(iv) the adoption or repeal of any rule or regulation having the force and effect of law” (Executive Law § 94 [9] [k]).
Denials by the Public Advisory Board of applications for deletion of items from public disclosure and exemption from filing are appealable to the State Ethics Commission and then to the courts. Additionally, the recently promulgated regulations of the Ethics Commission require that an employee, who is the subject of a first request for public inspection, must be notified by the Commission of his or her entitlement to apply for deletion of certain material from public disclosure and must be given an opportunity to submit a request for deletion. (9 NYCRR 937.6 [b].) Finally, the Executive Law provides for confidentiality of all information subject to an application for exemption or deletion pending an application for same. (Executive Law § 94 [18] [i].)
These provisions of the New York State Financial Disclosure Law manifest an acute sensitivity to the reporting indi *359 vidual’s right of privacy and any claims of irrelevancy sought to be asserted. Without question, the statute’s privacy mechanism adequately protects the reporting individual’s privacy interests and comports with the requirements of due process.[8]
Having concluded that the New York State Ethics Law, and more particularly the financial disclosure provisions of same, is substantially related to the compelling State interest in discovering and deterring corruption, and in promoting public confidence in government, and affords constitutionally adequate protection for the privacy interests implicated, plaintiff’s privacy claims must yield to the State’s interests.
FREEDOM OF ASSOCIATION
Plaintiff further contends that certain aspects of section 73-a of the Public Officers Law are violative of his fundamental rights to freedom of association and freedom of speech, as guaranteed by the First Amendment of the US Constitution. In this regard plaintiff focuses his First Amendment argument on paragraphs 4 and 5 of the annual statement of financial disclosure, which plaintiff maintains require revelation of information regarding an individual’s private business and organizational associations that are unrelated to the State’s interest in ferreting out corruption and conflicts of interest.[9]
However, plaintiff has failed to establish that section 73-a of *360 the Public Officers Law will significantly inhibit the exercise of his First Amendment rights of speech and association. In order to sustain a First Amendment claim, plaintiff is required to make a "factual showing 'that on past occasions revelation of the identity of [the organization’s] rank-and-file members [had] exposed these members to economic reprisal, loss of employment, threat of physical coercion, and other manifestations of public hostility’.” (Hunter v City of New York, 88 Misc 2d 562, 580, revd on other grounds 58 AD2d 136, affd 44 NY2d 708, supra; Buckley v Valeo, 424 US 1, 67-71; Barry v City of New York, supra.) Plaintiff does not present any record evidence of antagonism by the State of the sort proffered in National Assn. for Advancement of Colored People v Alabama (357 US 449).[10]
Consequently, plaintiff’s alleged infringement of his right of association is highly speculative and does not justify holding the challenged legislation unconstitutional on its face. Moreover, it is evident from the legislative history, and a fair reading of the statute, that section 73-a of the Public Officers Law was not adopted for the purpose of requiring disclosure of organizational membership with the intent to restrain free *361 dom of association. (See, Slevin v City of New York, 551 F Supp 917, revd on other grounds 712 F2d 1554, supra.) Here any adverse impact of the Financial Disclosure Law on plaintiffs association rights, if any, is a tangential effect of legislation which promotes the State’s compelling interest in encouraging the integrity of government and the public’s confidence in same.
Consequently, those portions of section 73-a of the Public Officers Law, which require a reporting person to disclose certain business and organizational associations, are not discordant with plaintiffs First Amendment rights.
FOURTH AMENDMENT
Plaintiff contends further that the Financial Disclosure Law constitutes an unlawful "fishing expedition” into the lives of governmental employees, their spouses and children, in derogation of the Fourth Amendment’s prohibition against unreasonable searches and seizures.
Initially, as noted by the Second Circuit Court of Appeals, in Barry (712 F2d, supra, at 1564), "it is doubtful * * * whether the Fourth Amendment applies in this context.” Moreover, it has been consistently held that upper echelon policy-making government employees, like plaintiff, have no reasonable expectation that they may keep information regarding their financial dealings and holdings, or any other information required to be disclosed by Public Officers Law § 73-a secret from their employer. (Barry v City of New York, 712 F2d 1554; Slevin v City of New York, 551 F Supp 917, supra; Kaplan v Board of Educ., 759 F2d 256, supra.)
Even if the plaintiff were to hold a reasonable expectation of privacy with respect to his financial affairs, the Ethics in Government Act would not abridge plaintiffs Fourth Amendment rights. As recognized by Judge Sofaer, in Slevin (supra, at 925), in this context the Fourth Amendment "demands only reasonableness, i.e., that the information sought be 'particularly described’ and relevant to an inquiry the investigating agency is authorized to make, and that the legislative judgment have a reasonable basis.”
Here, the information sought by the Financial Disclosure Law is solicited informally from all covered officers and employees; the informational request is uniform, described in detail and relevant to the proper governmental objective of deterring corruption and conflicts of interest; and the interests *362 of employees in avoiding unnecessary and unreasonable disclosure of personal financial matters is adequately addressed by the statute’s privacy mechanism. Under these circumstances, the disclosure requirements of section 73-a of the Public Officers Law are clearly reasonable and constitutional.
PRIVILEGE AGAINST SELF-INCRIMINATION
The court finds equally unpersuasive plaintiff’s argument that the filing of an annual statement of financial disclosure abridges plaintiff’s Fifth Amendment privilege against self-incrimination and compelled testimony.
In this regard, Judge Sofaer’s discussion of the Fifth Amendment issue in Slevin (supra) is dispositive of plaintiff’s Fifth Amendment contentions herein. In Slevin, the court rejected plaintiff’s argument that New York City’s financial disclosure ordinance, Local Law No. 48, " ’implicate[d] the Fifth Amendment protection against compelled testimony that may be self-incriminating.’ ” (Supra, at 925.) The court reasoned that while New York City’s Financial Disclosure Law might entitle certain members of the class of persons required to file, to assert their Fifth Amendment rights, this in and of itself, did not result in invalidation of the law. The court went on to state that " ’the Fifth Amendment protects against ’’compelled self-incrimination, not [the disclosure of] private information.” ’ ” (Supra, at 926.)
As with an individual’s personal income tax returns (see, United States v Sullivan, 274 US 259), the mere fact that the disclosures required by section 73-a of the Public Officers Law might tend to incriminate a few individuals does not render the statute constitutionally infirm. Significantly, the information requested by section 73-a of the Public Officers Law is not inherently incriminating in nature, nor does the statute focus on those persons inherently suspect of criminal activities. To the contrary, the questions posed by the Financial Disclosure Law are neutral on their face and are directed to all policy-making officers and employees of the State at large. (Garner v United States, 424 US 648, 659-661.) Indeed, as with tax returns, ”[t]he great majority of persons” filing financial disclosure forms under the statute will ’’not incriminate themselves” by filing. (Supra, at 661.) Moreover, so long as timely raised, plaintiff may assert his Fifth Amendment privilege with respect to any item or items of information demanded by section 73-a of the Public Officers Law. In this regard the *363 statute neither mandates a public employee’s waiver of the privilege against self-incrimination nor authorizes the imposition of penalties, either criminal or civil, for a public employee’s invocation of his or her Fifth Amendment rights.
In sum, the disclosure requirements of section 73-a of the Public Officers Law are substantially related to the legitimate interests of the State in discovering and deterring corruption and conflicts of interest involving government employees and furthers these interests without abrogating an employee’s Fifth Amendment rights. (Slevin v City of New York, supra; Barry v City of New York, supra; Hunter v City of New York, supra.)
EQUAL PROTECTION
Lastly, plaintiff argues that insofar as section 73-a of the Public Officers Law does not apply to officers and employees of the New York State judiciary, it denies those members of the executive and legislative branches of government who are subject to the statute’s reporting requirements, the equal protection of law.
It is well settled that an enactment which impairs no fundamental right and involves no suspect classification will survive equal protection scrutiny as long as it bears some rational relation to a legitimate governmental interest. (Maresca v Cuomo, 64 NY2d 242.) "If any conceivable state of facts will support the classification, said provisions will not be held violative of * * * equal protection”. (Supra, at 250.) Moreover, again, " '[legislative enactments are presumed to be constitutional, i.e., they are presumed to be supported by facts known to the Legislature * * * While this presumption is rebuttable, unconstitutionality must be demonstrated beyond a reasonable doubt’. ” (Supra, at 250 [emphasis added].)
Analyzing plaintiff’s equal protection argument within the context of these principles, it is evident there are no equal protection infirmities with respect to section 73-a of the Public Officers Law.
Contrary to plaintiff’s contentions, New York State’s judicial officers and employees are not exempt from financial disclosure. In fact, although not covered by section 73-a of the Public Officers Law, judicial personnel are subject to the financial disclosure requirements of the Judiciary Law which are substantially identical to those imposed upon executive *364 and legislative employees by the Public Officers Law. (Judiciary Law § 211 [4].)[11]
Judiciary Law § 211 (4) establishes, within the judiciary, a system of financial disclosure parallel to that imposed upon the legislative and executive branches of government by section 73-a of the Public Officers Law.
Moreover, it is clear that classification of legislative and executive employees subject to financial disclosure pursuant to section 73-a of the Public Officers Law, and judicial employees subject to financial disclosure pursuant to section 211 (4) of the Judiciary Law, is not a suspect classification and does not impermissibly interfere with a fundamental right. Consequently, rational basis scrutiny is appropriate.
To the extent that the disclosure requirements applicable to the judiciary are administered by the Chief Administrator of the Courts, rather than the Ethics Commission, and to the extent such disclosure will not be required until 1991, such differences in treatment do not offend the Equal Protection Clause. The Equal Protection Clause does not require that a State choose between attacking every aspect of a problem or not attacking the problem at all. (Dandridge v Williams, 397 US 471, 486-487.)
It has long been recognized under our system of government that a separation of powers between the judiciary and the executive and legislative branches of government is essential to the existence of a free and independent judiciary. To require judicial officers and employees to make financial disclosure to the State Ethics Commission could well result in an improvident expansion of the executive’s jurisdiction over the *365 judiciary. Consequently, it cannot be said that the Legislature’s determination to have judicial employees make financial disclosure to the Chief Administrator of the Courts rather than to the Ethics Commission is without rational basis.
Accordingly, the court finds plaintiff’s equal protection argument likewise without merit.
For the foregoing reasons, the court finds New York State’s Financial Disclosure Law (Public Officers Law § 73-a) constitutionally sound. Accordingly, plaintiff’s motion for preliminary injunctive relief is denied and, there being no issues of fact, defendant’s motion for summary judgment is granted, plaintiff’s action for a permanent injunction is dismissed, and the court declares New York State’s Financial Disclosure Law (Public Officers Law § 73-a) constitutional.
[Portions of opinion omitted for purposes of publication.]

. As originally enacted Public Officers Law § 73-a (1) (c) (ii) required financial disclosure by State officers or employees "who receive annual compensation in excess of thirty thousand dollars or hold policy making positions” (see, L 1987, ch 813).
Effective January 1, 1990, the $30,000 threshold filing criteria has been eliminated and replaced by the requirement that those officers who earn in excess of the "filing rate” as established by the statute, as well as policy makers, must file a financial disclosure form with the Ethics Commission. The term "filing rate” is defined as "the job rate of SG-24” as set forth in section 130 of the Civil Service Law. (See, L 1989, ch 242, § 5.) The net effect of this amendment is that it raises the salary threshold of those subject to disclosure. Most recently, the State Ethics Commission has limited the filing obligation to "only those individuals who receive annual compensation in excess of $53,171 as of April 1, 1990,” as well as policy makers. (NY Ethics Commn, Administrative mem No. 86.5 [Feb. 6,1990].)

. Plaintiff does not contest the validity of the designation of his job classification as that of a "policy maker”, and readily acknowledges that his regular employment duties entail the implementation and formulation of agency policy.

. Since enactment of the statute, the Ethics Commission has extended the filing deadline to June 15, 1989.

. Although technically a motion for summary judgment pursuant to *353 CPLR 3212 will not lie where, as here, the defendant has not interposed an answer, nevertheless, the court has the prerogative to convert the motion to dismiss under CPLR 3211 to a motion for summary judgment, and there being no issues of fact herein — only considerations of law — the court elects to treat the CPLR 3211 motion as a motion for summary judgment. Sufficient notice and the opportunity to present further evidence was given to all parties.

. The "right to privacy” has been determined to involve at least two distinct kinds of interests, those being characterized as interests in "confidentiality” and those characterized as interests in "autonomy.”
"The autonomy branch of privacy protects personal choice in 'matters relating to marriage, procreation, contraception, family relationships, and child rearing and education.’ ” (Barry v City of New York, 712 F2d 1554, 1559.) Whereas the confidentiality branch, which encompasses any claimed interest in " 'financial privacy’ ” (see, Barry v City of New York, supra, at 1559; Plante v Gonzales, 575 F2d 1119 [5th Cir 1978]), pertains to an individual’s " 'interest in avoiding disclosure of personal matters.’ ” (Barry v City of New York, supra, at 1559.)

. See also Rapp v Carey (44 NY2d 157, 161) where the Court of Appeals reaffirmed its determination as to the constitutionality of Executive Order No. 10 (9 NYCRR 3.10) vis-á-vis a challenge that it violated employee privacy interests, although invalidating the order on other grounds.

. In Hunter v City of New York (44 NY2d 708), the Court of Appeals declared unconstitutional that portion of Local Laws, 1975, No. 1 of the City of New York, which afforded the public an unfettered right of inspection with respect to financial disclosure statements filed by covered employees. The court reasoned that the disclosure law was arbitrary and capricious and ignored due process to the extent that it failed to provide employees with a mechanism for asserting their privacy interest with respect to personal financial information unrelated to the performance of their duties as public servants.

. In this regard the privacy mechanism implemented by the Ethics in Government Act (L 1987, ch 813) provides significantly greater protection than the privacy mechanisms found to comport with due process in both Barry v City of New York (712 F2d 1554) and Evans v Carey (40 NY2d 1008).

. Paragraph 4 (a) of the annual statement of financial disclosure requires a reporting individual to: "List any office, trusteeship, directorship, partnership, or position of any nature, whether compensated or not, held by the reporting individual with any firm, corporation, association, partnership, or other organization other than the State of New York. Include compensated honorary positions; do NOT list membership or uncompensated honorary positions. If the listed entity was licensed by any state or local agency, was regulated by any state regulatory agency or local agency, or, as a regular and significant part of the business or activity of said entity, did business with, or had matters other than ministerial matters before, any state or local agency, list the name of any such agency.” (Public Officers Law § 73-a [3], [4] [a] [emphasis added].)
Paragraph 4 (b) of the disclosure statement requires a reporting individual to: "List any office, trusteeship, directorship, partnership, or position of any nature, whether compensated or not, held by the spouse or unemancipated child of the reporting individual, with any firm, corporation, association, partnership, or other organization other than the State of New York. Include compensated honorary positions; do NOT list membership or uncompensated honorary positions. If the listed entity was licensed by any state or *360 local agency, was regulated by any state regulatory agency or local agency, or, as a regular and significant part of the business or activity of said entity, did business with, or had matters other than ministerial matters before, any state or local agency, list the name of any such agency.” (Public Officers Law § 73-a [3], [4] [b] [emphasis added].)
Paragraph 5 (a) of the disclosure statement requires a covered employee to set forth: "List the name, address, and description of any occupation, employment (other than the employment” listed under Item 2 above), trade, business or profession engaged in by the reporting individual. If such activity was licensed by any state or local agency, was regulated by any state regulatory agency or local agency, or, as a regular and significant part of the business or activity of said entity, did business with, or had matters other than ministerial matters before, any state or local agency, list the name of any such agency.” (Public Officers Law § 73-a [3], [5] [a].)

. In National Assn. for Advancement of Colored People v Alabama (357 US 449), the Supreme Court, in reversing a State court order of contempt, held that a court order requiring the National Association for the Advancement of Colored People (NAACP) to disclose the names and addresses of all of the association’s Alabama members and agents was violative of the petitioner’s freedoms of speech and association as guaranteed by the First and Fourteenth Amendments of the US Constitution. The Supreme Court’s holding was predicated upon its conclusion that the production order entailed a substantial likelihood of restraint on the NAACP’s members as evidenced by "an uncontroverted showing that on past occasions revelation of the identity of its rank-and-file members has exposed these members to economic reprisal, loss of employment, threat of physical coercion, and other manifestations of public hostility.” (357 US, supra, at 462.)

. Judiciary Law § 211 (4) provides in part as follows: "4. By September first, nineteen hundred eighty-eight, the chief judge, after consultation with the administrative board, shall approve a form of annual statement of financial disclosure which form shall apply to all judges, justices, officers and employees of the courts of record of the unified court system, who receive annual compensation in excess of thirty thousand dollars. Such form of annual statement of financial disclosure shall be substantially similar to the form set forth in subdivision three of section seventy-three-a of the public officers law. Within one year after approval of such form, the chief judge shall cause the chief administrator of the courts to promulgate rules or regulations which require every judge, justice, officer and employees of the courts of record of the unified court system, who receives annual compensa- . tion in excess of thirty thousand dollars, to report the information required by the approved form effective first with respect to a filing which shall be required in nineteen hundred ninety-one (generally applicable to information for the preceding calendar year) and thereafter, effective for future annual filings.” (Emphasis added; see also, 22 NYCRR part 40.)