OPINION OF THE COURT
Joseph Harris, J.
In this CPLR article 78 proceeding, petitioner challenges the validity of 10 NYCRR 405.3 (b) (10), (11) and (13). These Health Department regulations require that hospitals provide physical examinations and record medical histories for "all employees, members of the medical staff, students, and volunteers whose activities are such that a health impairment would pose a potential risk to patients or personnel. The examination shall be of sufficient scope to ensure that no person shall assume his/her duties unless he/she is free from a health impairment which is of potential risk to the patient or which might interfere with the performance of his/her duties, including the habituation or addiction to depressants, stimulants, narcotics, alcohol or other drugs or substances *138 which may alter the individual’s behavior. The hospital is required to provide such examination without costs for all employees.” (10 NYCRR 405.3 [b] [10].)
The regulations also require that hospitals (a) at least annually reassess the health status of its personnel, (b) provide for the immunization of personnel for rubella and testing for tuberculosis, and (c) maintain medical records for all personnel reflecting the dates and results of the health assessments, physical examinations, the results of lab tests and X rays, and records of immunizations, illnesses and injuries.
Petitioner, a physician, raises six objections to the regulations: (1) That the statutory basis for the regulations constitutes an unlawful delegation of legislative authority, in violation of the separation of powers doctrine; (2) that respondents exceeded the scope of their authority in promulgating the regulations; (3) that the regulations are overly broad and uncircumscribed in that they allow hospitals to develop different minimum mental and physical qualifications for obtaining or retaining staff privileges; (4) that the regulations "violate” Public Health Law § 2801-b, in failing "to provide any specific guidelines and criteria * * * [or] other minimal substantive and procedural due process protection for * * * physicians with staff membership privileges”; (5) that the provision requiring mandatory immunization for rubella violates the Fourth Amendment of the US Constitution and article I, § 12 of the NY Constitution; and (6) that the medical record-keeping provision violates petitioner’s right of privacy.
THE LAW

Procedural Considerations

Objections "3” and "4” above, contained in paragraph "11” and "12” of the petition, set forth the only grounds for relief cognizable in an article 78 proceeding. (See, New York State Assn. of Counties v Axelrod, 156 AD2d 14 [3d Dept 1990]; CPLR 7803 [3].)
Procedurally they are time barred. The regulations herein were filed with the Secretary of State on August 11, 1988, and became effective on January 1, 1989. This proceeding, which had to be commenced "within four months after the determination to be reviewed becomes final and binding upon the petitioner” (CPLR 217), was not commenced until June 27, 1990. Actual notice of an administrative act is not required where, as here, the act is a "quasi-legislative” act, as *139 differentiated from a "quasi-judicial” administrative act, where actual notice is required to trigger the Statute of Limitations. Petitioner herein does not, in paragraphs "11” and "12” of the petition, attack an individualized adjudication or a specific application of the regulations to him; rather, he makes a facial attack on the regulations themselves, thus attacking a quasi-legislative act, not a quasi-judicial one. (See, Matter of Owners Comm. on Elec. Rates v Public Serv. Commn., 76 NY2d 779, revg 150 AD2d 45.)
Petitioner’s claim set forth in paragraph "11” of his petition — that the regulations allow hospitals to set different minimum mental and physical requirements for obtaining or retaining physician staff privileges — fails for another reason— it is not ripe for judicial review, and thus is nonjusticiable.
There is no proof that petitioner has applied for privileges at another hospital where unreasonably stringent mental or physical requirements may have been set. If that happens, other legal redress is available to him. However, here, "Where the harm sought to be enjoined is contingent upon events which may not come to pass, the claim to enjoin the purported hazard is nonjusticiable as wholly speculative and abstract.” (Matter of New York State Inspection, Sec. & Law Enforcement Employees v Cuomo, 64 NY2d 233, 240 [1984]; see also, American Ins. Assn. v Chu, 64 NY2d 379 [1985]; New York Pub. Interest Research Group v Carey, 42 NY2d 527 [1977].)
Petitioner’s claims — set forth in paragraphs "11” and "12” of his petition — that the regulations invalidly allow hospitals to develop different minimum mental and physical requirements for obtaining or retaining staff privileges, and that they fail to provide specific guidelines or other minimum "substantive and procedural” due process protection for staff physicians, are essentially a claim that these regulations, to that extent, are arbitrary and capricious. Even if the court were to decide these contentions on their merits, petitioner would find no solace. The regulations in these two respects are not arbitrary and capricious, but are rational and well tailored to meet variations in health problems faced by different medical institutions. The regulations do not give hospitals unfettered discretion in setting mental and physical qualifications. They must be of sufficient scope to ensure that hospital personnel are free of health impairments that are potential risks to patients and personnel. (10 NYCRR 405.3 [b] [10].)
Likewise, petitioner’s argument that the regulations fail *140 to provide due process protection for staff physicians is without merit. Firstly, despite the State’s regulation of hospitals, there is no "State action” when a private hospital revokes staff privileges, so no due process protections are required. (See, Fried v Straussman, 41 NY2d 376.) A limited right of review of a revocation of a physician’s staff privileges is set forth in procedures contained in section 2801-b of the Public Health Law, which modified the common-law rule that, absent a contractual provision to the contrary, a hospital could revoke a physician’s staff privileges at will, for any or no reason. (See, Matter of Cohoes Mem. Hosp. v Department of Health, 48 NY2d 583.) The regulations herein neither enhance nor diminish the procedural requirements of Public Health Law § 2801-b, nor the standard of judicial review contained therein. Neither were they intended to do so, nor need they do so.
The remaining claims of petitioner do not appear to fall within the realm of an article 78 proceeding, but fit more aptly in the realm of a declaratory judgment. They do not seek review of an administrative determination or act but seek to quiet or stabilize "an uncertain or disputed jurai relation either as to present or prospective obligations.” (James v Alderton Dock Yards, 256 NY 298, 305.) The questions involved are questions of substantive law for which the procedural device of a declaratory judgment action was designed. Accordingly, the remainder of the petition is converted to a complaint for declaratory relief. There being no disputed issues of fact — only questions of law — the court will proceed to render summary judgment thereon.
SUBSTANTIVE CONSIDERATIONS

Delegation of Legislative Powers

A State agency possesses "those powers expressly delegated by the Legislature, together with those powers required by necessary implication”. (Matter of Consolidated Edison Co. v Public Serv. Commn., 47 NY2d 94, 102, revd on 1st Amend grounds only 447 US 530 [1980].) Here, in formulating and promulgating the challenged regulations, respondents acted pursuant to specific legislative directives in furtherance of the Legislature’s police power. Public Health Law § 2805-j provides respondents with specific authority to require physical examinations for hospital personnel, including physicians with staff privileges. Subdivision (1) requires every hospital to *141 "maintain a coordinated program for the identification and prevention of medical * * * malpractice.” Such programs must include the "periodic review * * * of the credentials, physical and mental capacity and competence in delivering health care services of all persons who are employed or associated with the hospital”. (Public Health Law § 2805-j [1] [c].) Public Health Law § 2805-j (1) (b) further requires a review of the mental and physical capacity and competence of physicians, both periodically and in specific instances where warranted, as part of an evaluation of staff privileges.
Specific statutory authority for maintenance of records resulting from those examinations (10 NYCRR 405.3 [b] [13]) is found in Public Health Law § 2805-j (1) (f). (See also, Public Health Law § 2805-j [1] [c].)
There is both general and specific authority to require immunization for rubella (German measles) and testing for tuberculosis. In section 2800 of the Public Health Law, the Legislature declared: "the department of health shall have the central, comprehensive responsibility for the development and administration of the state’s policy with respect to hospital and related services”. The statutory standard therein set forth mandates the Department of Health to "provide for the protection and promotion of the health of the inhabitants of the state”. (Public Health Law § 2800.)
The Legislature may lawfully confer discretion upon an administrative agency if it limits the field in which the discretion is to operate, and provide standards to govern its exercise. In Matter of Levine v Whalen (39 NY2d 510), the Court of Appeals held Public Health Law § 2800 to be a valid delegation of legislative authority, and the standard for administrative action contained therein a satisfactory standard.
The Legislature is not required to "supply administrative officials with rigid formulas in fields where flexibility” is necessary. (Matter of Nichols v Kahn, 47 NY2d 24, 31 [1979].) A delegation of power need only specify standards in so detailed a manner "as is reasonably practicable in the light of the complexities of the particular area to be regulated.” (Chiropractic Assn. v Hilleboe, 12 NY2d 109, 120 [1962].)
More specifically, Public Health Law § 2803 empowers the State Hospital Review and Planning Council, subject to the approval of the Commissioner of Health, to adopt regulations setting "standards and procedures relating to hospital operating certificates”, and to change same to ensure "that the *142 health and safety of the residents of hospitals are not endangered”. (Public Health Law § 2803 [2] [a] [v].) The requirements of 10 NYCRR 405.3, which govern the administration of hospitals, are a part of the standards and procedures respecting hospital certificates. (See, 10 NYCRR ch V, subch A, specifically 400.1 and 400.2.)
Rubella immunization and tuberculosis screening are clearly standards or procedures relating to hospital operating certificates. (See, Matter of Memorial Hosp. v Axelrod, 68 NY2d 958.) Under Public Health Law §2805 (2) (b), the Department of Health may not issue an operating certificate unless it finds that the "personnel * * * standards of medical care, and hospital service are fit and adequate and that the hospital will be operated in the manner required by this article and the rules and regulations thereunder.”
Commonly known as German measles, rubella is a contagious viral disease that causes birth defects, including brain and neurological damage, in children born to mothers who contract it during pregnancy. Because a person can be contagious for some time before seeking medical attention, the virus can be easily spread in a hospital setting absent mandatory immunization. Rubella vaccination is a relatively low risk procedure.
Likewise, tuberculosis is easily spread in a hospital setting and is still a significant health problem in New York State. The test for tuberculosis involves a minute subcutaneous injection that is neither intrusive nor dangerous.
In requiring doctors with staff privileges to be immunized for rubella and tested for tuberculosis, respondents acted pursuant to their legislative mandate to "provide for the protection and promotion of the health of the inhabitants of the state”. (Public Health Law § 2800.) It was fitting and proper to do so.
None of the circumstances and considerations present in Boreali v Axelrod (71 NY2d 1 [1987]) exist with respect to the regulations involved here. Certainly their promulgation do not constitute a usurpation of legislative authority.

Unlawful Search and Seizure

Petitioner contends that the provisions of 10 NYCRR 405.3, which require mandatory immunization for rubella, violate the Fourth Amendment of the US Constitution and article I, § 12 of the NY Constitution.
*143 His contention is ill-founded. The above constitutional provisions protect only against "unreasonable” searches and seizures by government. Reasonableness generally requires a warrant based on probable cause, but "[u]nder * * * special circumstances * * * it may be reasonable to * * * search without a warrant on grounds not amounting to probable cause.” (Matter of Patchogue-Medford Congress of Teachers v Board of Educ., 70 NY2d 57, 68 [1987].) In such cases, the court "must assess the reasons for the search and the extent to which it intrudes on legitimate privacy interests to determine whether, on balance, the government’s action is reasonable”. (Supra, at 68; see also, Matter of Seelig v Koehler, 76 NY2d 87 [May 8, 1990]; Matter of Caruso v Ward, 72 NY2d 432 [1988].)
The reasonableness standard may be relaxed in situations where the search or seizure is in furtherance of some routine administrative function rather than a criminal investigation. (See, People v Scott D., 34 NY2d 483, 486-487 [1974] [holding that the basis for finding sufficient cause for search of school children is lessened where purpose is merely to preserve school environment]; see also, Matter of Patchogue-Medford Congress of Teachers v Board of Educ., supra, at 67; Treasury Employees v Von Raab, 489 US 656 [1989].) Especially is this so, where, as in the instant case, "Government seeks to prevent the development of hazardous conditions or to detect violations that rarely generate articulable grounds for searching any particular place or person.” (Treasury Employees v Von Raab, supra, at 668.)
The blood test* in the instant case is done not in furtherance of a criminal investigation, but simply to determine whether hospital personnel need to receive the rubella vaccine. The State has a compelling interest in ensuring that hospital personnel do not spread rubella to patients and other staff. "Upon the principle of self-defense, of paramount neces *144 sity, a community has the right to protect itself against an epidemic of diseases which threatens the safety of its members.” (Jacobson v Massachusetts, 197 US 11, 27 [1905].)

Right of Privacy

The right of privacy is not a "bright line” concept, but "it is clear that it has application in two primary areas of personal autonomy: 'the individual interest in avoiding disclosure of personal matters’ and 'the interest in independence in making certain kinds of important decisions’ ”. (Crosby v State of New York, Workers’ Compensation Bd., 57 NY2d 305, 311 [1982], quoting Whalen v Roe, 429 US 589, 599-600 [1977].)
Petitioner claims the regulations lack confidentiality protections and thus implicate his privacy interest in nondisclosure of personal matters. The applicable standard of review depends on whether the challenged law affects a reasonable expectation of privacy. (See, Slevin v City of New York, 551 F Supp 917, 929 [SD NY 1982].) Where the law does not implicate a legitimate expectation of privacy, the law will be upheld if it is rationally related to a legitimate government purpose. (Chalfy v Turoff, 804 F2d 20, 23 [2d Cir 1986]; Whalen v Roe, 429 US 589, 602, supra; Ackley v Goodman, 131 AD2d 360 [1st Dept 1987].) Conversely, where a reasonable expectation of privacy is implicated, the courts apply an intermediate level of scrutiny. The interests of the government are weighed against the individual’s privacy interest. (See, Evans v Carey, 40 NY2d 1008 [1976]; Matter of Board of Educ. v New York State Pub. Employees Relations Bd., 147 AD2d 70, 74 [3d Dept 1989]; Watkins v New York State Ethics Commn., 147 Misc 2d 350 [Sup Ct, Albany County, Mar. 21, 1990, Harris, J.].)
A physician has no constitutionally protected privacy interest in the results of a physical examination required as a condition for obtaining or retaining hospital privileges. (See, Chalfy v Turoff, supra, at 23; Ackley v Goodman, supra, at 361.) Accordingly, the rational basis test applies here. However, in the instant case, even under the intermediate level of scrutiny test, whatever privacy interest petitioner may have is clearly outweighed by the State’s compelling interest in requiring the physical examinations involved here and in maintaining records thereof.
One who is statutorily required to undergo a physical examination has a diminished expectation of privacy. (See, Matter *145 of Patchogue-Medford Congress of Teachers v Board of Educ., 70 NY2d 57, 69 [1987], supra [holding that teachers subject to an annual physical under Education Law § 913 had a diminished expectation of privacy].) Under Public Health Law § 2805-j (1) (c), hospitals must periodically review the physical and mental capacity of physicians to deliver health care. A physician seeking to obtain or retain hospital privileges must accordingly reasonably expect to be subjected to a physical examination.
The intrusion into petitioner’s privacy, as here, resulting from disclosure to a limited number of public officials, is de minimis, far less than disclosure to the public. (Slevin v City of New York, supra, at 934; Nixon v Administrator of Gen. Servs., 433 US 425, 458 [1977]; Whalen v Roe, supra.) Disclosure to the government, unlike public disclosure, results in fewer persons learning of the facts disclosed, and "serves identifiable needs that limit both the persons to whom disclosure is made and the purposes for which they may use the information disclosed.” (Slevin v City of New York, supra, at 934.)
The records of the physical examination required by the regulations herein enjoy the confidentiality protections afforded by Public Health Law § 2805-m (1). These records may be disclosed only to the Department of Health and hospitals considering whether to grant privileges to the physician. (Public Health Law § 2805-m [1]; § 2805-k.) Once the records are disclosed to the Department of Health they come under the protection of Public Health Law § 2805-m (2) and are not subject to disclosure under the Freedom of Information Law or the discovery provisions of the Civil Practice Law and Rules, except where specifically authorized. As in Whalen v Roe (supra, at 601), there is no support in the record of this case "for an assumption that the security provisions of the statute will be administered improperly.” Moreover, disclosure to the Department of Health is specifically authorized by Public Health Law § 2805-j, whose validity is not herein contested. Disclosure of the records herein to the Department of Health is "not significantly distinguishable from a host of other unpleasant invasions of privacy that are associated with many facets of health care.” (Whalen v Roe, supra, at 602.) Many types of private medical information are required to be disclosed to public health agencies, but these "do * * * not automatically amount to an impermissible invasion of privacy.” (Supra, at 602.)
*146 Disclosure to the Health Department is essential to achieve the statutory goal of reducing medical malpractice resulting from physically and mentally unfit physicians. (Public Health Law § 2805-j.) Further, in contrast to petitioner’s minimal privacy interest, the State has a weighty and compelling interest in ensuring that physicians are free from health impairments that pose a threat to hospital patients and personnel.
CONCLUSION
The key to the genesis of these regulations lies partly in the desire to reduce the economic cost to hospitals of medical malpractice; but, in a larger sense, the true cost of medical malpractice is its tragic and deleterious effect upon the health and lives of those who come to a hospital to get well. These regulations require of a hospital’s medical staff no more than what for years was required of its nurses and other employees. An infectious disease transmitted by a doctor is just as lethal as one transmitted by a nurse or other hospital personnel.
That these regulations are not beneficial to medical practitioners with hospital staff privileges is irrelevant. That is not their function. Hospitals do not exist for the benefit of their employees; they exist for the benefit of their patients. They exist to cure the sick.
The Legislature of this State has charged the Commissioner of Health with the responsibility of making hospitals safe places to get well. These regulations are tailored to accomplish that end. The question respecting these regulations is not why now, but what took so long?
The court has examined all other arguments of petitioner and finds them without merit. Accordingly, the court grants respondents’ motion for summary judgment and declares 10 NYCRR 405.3 (b) (10), (11), and (13), in all respects valid.

 Unlike random drug tests, there is no concern here with arbitrary or discriminatory selection of the candidates for a blood test for rubella antibodies. A hospital staff member is subject to a blood test only if he refuses to be inoculated with the rubella vaccine and is unwilling or unable to document a prior vaccination. (See, Matter of Seelig v Koehler, 76 NY2d 87, 95 [May 8, 1990].) Since the State could lawfully mandate that physicians be vaccinated against rubella as a valid exercise of the State’s police power, giving the physician the choice to prove immunization by a blood test as an alternative to inoculation is a fair compromise and clearly constitutional. (See, Jacobson v Massachusetts, 197 US 11 [holding mandatory immunization for smallpox a valid exercise of police power].)