IN THE COURT OF APPEALS
STATE OF ARIZONA
DIVISION TWO

FILED BY CLERK

SEP 27 2005

COURT OF APPEALS
DIVISION TWO

| | | |
|---|---|---|
| ABDULKADIR HOURANI, M.D., | ) | 2 CA-CV 2004-0155 |
| | ) | DEPARTMENT A |
| Plaintiff/Appellee, | ) | |
| | ) | O P I N I O N |
| v. | ) | |
| | ) | |
| BENSON HOSPITAL, an Arizona | ) | |
| nonprofit corporation, | ) | |
| | ) | |
| Defendant/Appellant. | ) | |
| | ) | |

APPEAL FROM THE SUPERIOR COURT OF COCHISE COUNTY

Cause No. CV200200261

Honorable Wallace R. Hoggatt, Judge

AFFIRMED IN PART;
VACATED IN PART AND REMANDED

Chandler & Udall, LLP
  By Peter Akmajian and Michael J. Crawford                    Tucson
                                       Attorneys for Plaintiff/Appellee

Slutes, Sakrison & Hill, P.C.
  By Tom Slutes and Diana L. Kanon-Ustariz                    Tucson
                                       Attorneys for Defendant/Appellant

H O W A R D, Presiding Judge.

¶1        Appellant Benson Hospital challenges the superior court's grant of summary

judgment in favor of appellee Abdulkadir Hourani in his appeal of the Hospital's suspension

of his hospital privileges. The Hospital also argues that the court erred by denying its cross-motion for summary judgment. We affirm the court's denial of the Hospital's motion, but reverse the granting of Hourani's motion, finding that factual issues precluded summary judgment.

¶2 The procedural facts relevant to this appeal are undisputed. Abdulkadir Hourani is a board-certified, pulmonary critical-care specialist licensed to practice medicine in Arizona. From 2000 to 2002, he was employed by EmCare, Inc., which contracted with Benson Hospital to provide it emergency room physicians. In December 2000, the Hospital's Medical Staff Executive Committee began investigating the quality of Hourani's care at the Hospital and subsequently voted to recommend to the Governing Board that it revoke Hourani's privileges to practice medicine at the Hospital. The Executive Committee informed Hourani of its decision, and Hourani requested a hearing. After the hearing, the hearing officer issued a report, stating that, of the eight cases discussed in his report, "variances" had occurred in three of the cases in which "the care varie[d] from the norm that has been established in Emergency Medicine." However, the hearing officer made no official recommendation to revoke Hourani's hospital privileges, stating at the hearing that "it is up to the Medical Staff to decide whether privileges are revoked or not revoked." After considering the hearing officer's report, the Executive Committee remained in favor of recommending to the Governing Board that it revoke Hourani's privileges.

¶3 Hourani appealed the Executive Committee's recommendation to the Appellate Review Committee. After a hearing, the Appellate Review Committee adopted

the Executive Committee's recommendation for revocation. The Governing Board subsequently accepted this recommendation and revoked Hourani's privileges to practice medicine at Benson Hospital. Hourani sought injunctive relief from the superior court, arguing that the Hospital's proceedings had denied him due process. Hourani moved for summary judgment, and the Hospital cross-moved for summary judgment. The superior court denied the Hospital's motion but granted Hourani's motion and ordered that his privileges be reinstated.

## DENIAL OF SUMMARY JUDGMENT

**¶4** Benson Hospital first argues that the superior court erred as a matter of law in denying its cross-motion for summary judgment, in which it had argued A.R.S. § 36-445.02(B) required the court to affirm a revocation of privileges that is based on substantial evidence. Although the denial of summary judgment is usually not an appealable order, *Bothell v. Two Point Acres, Inc.*, 192 Ariz. 313, ¶ 7, 965 P.2d 47, 50 (App. 1998), an appellate court may review a denial if it was based on a point of law. *Strojnik v. Gen. Ins. Co. of Am.*, 201 Ariz. 430, ¶ 11, 36 P.3d 1200, 1203 (App. 2001). Here, the court denied the Hospital's motion based on its interpretation of § 36-445.02(B). Furthermore, if we were to agree with the Hospital that we were required to uphold a decision supported by substantial evidence despite procedural errors, we would necessarily vacate the summary judgment in favor of Hourani without considering the procedural errors the superior court identified. We therefore address the Hospital's argument and review the denial de novo. *See Strojnik*, 201 Ariz. 430, ¶ 11, 36 P.3d at 1203.

3

¶5        Section 36-445, A.R.S., requires licensed hospitals to have their medical staffs evaluated through peer review. In order to "encourage full and frank discussions and decision-making" in a process that can be both time consuming and contentious, *Scappatura v. Baptist Hospital*, 120 Ariz. 204, 210, 584 P.2d 1195, 1201 (App. 1978), the legislature granted immunity to physicians engaging in peer review under § 36-445.02(B) by limiting any legal remedy to injunctive relief, providing:

> No hospital or outpatient surgical center and no individual involved in carrying out review or disciplinary duties or functions of a hospital or center pursuant to § 36-445 may be liable in damages to any person who is denied the privilege to practice in a hospital or center or whose privileges are suspended, limited or revoked. The only legal action which may be maintained by a licensed health care provider based on the performance or nonperformance of such duties and functions is an action for injunctive relief seeking to correct an erroneous decision or procedure. The review shall be limited to a review of the record. If the record shows that the denial, revocation, limitation or suspension of membership or privileges is supported by substantial evidence, no injunction shall issue. In such actions, the prevailing party shall be awarded taxable costs, but no other monetary relief shall be awarded.

¶6        The Hospital contended in its motion that the record contains substantial evidence supporting the revocation of Hourani's privileges; therefore, it argued, regardless of any procedural violations, § 36-445.02(B) requires that "no injunction shall issue" and the courts must uphold the Governing Board's decision.[1] Hourani countered that, even if

---

[1]At the hearing before the superior court, the Hospital conceded that an "egregious" procedural violation would authorize injunctive relief. Neither the history of the statute nor its wording justifies any distinction between those procedural violations that are egregious and those that are material but not egregious.

4

substantial evidence exists to support the Board's decision, § 36-445.02(B) entitles him to injunctive relief to remedy the Hospital's violation of its revocation procedures.

¶7        In interpreting a statute, our primary goal is to ascertain the legislature's intent. *Ziemak v. Schnakenberg*, 210 Ariz. 442, ¶ 14, 111 P.3d 1042, 1046 (App. 2005). If the statute is clear and unambiguous, we apply the plain meaning of the statute. *See id*. When an ambiguity exists, however, we attempt to determine legislative intent by considering "the statute's context, subject matter, historical background, effects and consequences, and spirit and purpose." *Zamora v. Reinstein*, 185 Ariz. 272, 275, 915 P.2d 1227, 1230 (1996). In construing a statute, "'we consider the statutory scheme as a whole and presume that the legislature does not include statutory provisions which are redundant, void, inert, trivial, superfluous, or contradictory.'" *Parrot v. DaimlerChrysler Corp*., 210 Ariz. 143, ¶ 9, 108 P.3d 922, 924 (App. 2005), *quoting State v. McDermott*, 208 Ariz. 332, ¶ 5, 93 P.3d 532, 534 (App. 2004).

¶8        We find that language in § 36-445.02(B) could support either party's interpretation. The statute provides that a physician may file "an action for injunctive relief seeking to correct an erroneous decision or procedure." *Id*. However, it also states that an injunction shall not be issued if the decision "is supported by substantial evidence." *Id*. Because those provisions could be interpreted as inconsistent, the language is ambiguous, and we must look beyond the language of the statute to determine the intent of the legislature.

5

**¶9** The Arizona legislature enacted the state's first statutorily mandated peer review requirement in 1971. 1971 Ariz. Sess. Laws, ch. 203, § 1. The statutes mandated peer review of physicians practicing in hospitals and provided immunity to those participating in the peer review process for decisions made "without malice and in good faith." *Id.* They did not specifically provide for any judicial review of a final peer review decision. In 1984, the legislature amended § 36-445.02 and removed all liability for those involved in peer review activities, added hospitals themselves to the immunity provision, and only permitted a plaintiff to seek injunctive relief for an erroneous decision or procedure occurring during the peer review process. 1984 Ariz. Sess. Laws, ch. 119, § 1; *see Goodman v. Samaritan Health Sys.*, 195 Ariz. 502, ¶ 20, 990 P.2d 1061, 1066 (App. 1999); *Gilbert v. Bd. of Med. Exam'rs*, 155 Ariz. 169, 178, 745 P.2d 617, 626 (App. 1987).

**¶10** After the statute was enacted but prior to the amendment of § 36-445.02 in 1984, this court espoused the general rule that the exclusion of a physician from staff privileges in a private hospital was not subject to judicial review. *Peterson v. Tucson Gen. Hosp., Inc.*, 114 Ariz. 66, 69, 559 P.2d 186, 189 (App. 1976). Even so, this court found that the prohibition against judicial review did not apply when "there is a contention that the hospital failed to conform to procedural requirements set forth in a hospital's constitution, bylaws, or rules and regulations." *Id.; see also Holmes v. Hoemako Hosp.*, 117 Ariz. 403, 404, 573 P.2d 477, 478 (1977) (courts have authority to review both "procedural and substantive aspects" of suspension of a physician's privileges); *Bock v. John*

6

*C. Lincoln Hosp.*, 145 Ariz. 432, 433, 702 P.2d 253, 254 (App. 1985) ("Since . . . the hospital breached its own procedural requirements, we have full authority to consider this case.").

¶11　　　In its 1984 revision, the legislature did not express any intent to limit a court's authority to review a decision based on a procedural defect; instead, the legislature appeared to codify the courts' opinions by amending the statute to permit aggrieved parties to file "an action for injunctive relief seeking to correct an erroneous decision or procedure." § 36-445.02(B). Furthermore, because we presume that the legislature did not include a provision that is "inert, trivial, [or] superfluous," *Parrot*, 210 Ariz. 143, ¶ 9, 108 P.3d at 924, we cannot find that the legislature granted physicians a right of action to correct an erroneous procedure and then, two sentences later, withheld any remedy for an erroneous procedure if substantial evidence supports the decision. Rather, we conclude that the legislature intended to allow courts to review the proceedings for both procedural and substantive errors, employing a deferential standard of review.

¶12　　　We therefore conclude that § 36-445.02(B) permits a physician to bring an action to correct an erroneous decision or procedure and, if error is proved, entitles the physician to injunctive relief. Based on this conclusion, we reject the Hospital's argument that the court erred in denying its motion for summary judgment.

**GRANT OF SUMMARY JUDGMENT**

¶13　　　The Hospital next argues that the court erred in granting Hourani's motion for summary judgment, contending that questions of material fact exist that precluded judgment.

A motion for summary judgment should only be granted if "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Ariz. R. Civ. P. 56(c), 16 A.R.S., Pt. 2; *see also Orme Sch. v. Reeves*, 166 Ariz. 301, 309, 802 P.2d 1000, 1008 (1990). We review a trial court's grant of summary judgment de novo, viewing the facts and reasonable inferences therefrom in the light most favorable to the nonmoving party. *Link v. Pima County*, 193 Ariz. 336, ¶ 12, 972 P.2d 669, 673 (App. 1998).

¶14          In granting Hourani's motion, the court identified four defects in the Hospital's revocation proceedings. The court found that there were no genuine issues of material fact on these violations and that Hourani was entitled to injunctive relief; the court ordered the Hospital to withdraw its revocation of Hourani's privileges "unless and until proper procedures are followed in accordance with the Bylaws."

¶15          The court's first identified procedural defect, which the parties had not argued, was that the hearing officer had failed to recommend a sanction.[2] In his report to the

---

[2]Hourani did not bring this defect or the other alleged defects to the attention of the hearing officer, the Appellate Review Committee, or the Governing Board. At any time during this process, all of the alleged defects could have been corrected. Hourani cannot allow procedural defects to continue and await the final outcome before complaining about them. *See DeGroot v. Ariz. Racing Comm'n*, 141 Ariz. 331, 340, 686 P.2d 1301, 1310 (App. 1984) (failure to raise issue before administrative tribunal precludes judicial review of that issue unless issue is jurisdictional); *see also Duffield v. Charleston Area Med. Ctr.*, 503 F.2d 512, 515 (4th Cir. 1974) (claim of bias and prejudice must be raised promptly after knowledge of alleged disqualification); *accord Neal v. City of Kingman*, 169 Ariz. 133, 136, 817 P.2d 937, 940 (1991); *Pavlik v. Chinle Unified Sch. Dist. No. 24*, 195 Ariz. 148, ¶ 8, 985 P.2d 633, 636 (App. 1999). Although these cases did not arise in a § 36-445.02(B) context, this waiver principle advances the intent of the statute by limiting the role of the courts in reviewing hospital proceedings.

Executive Committee, the hearing officer detailed Hourani's alleged "variances" but did not recommend any specific action on them. The court found that, under the Hospital's bylaws, the Executive Committee is bound to consider the hearing officer's findings as well as recommendations. However, the court said: "In this case, the executive committee could not have considered what was not provided. The failure of the hearing officer to have included recommendations not only deprived the executive committee of the benefit of those recommendations, but similarly deprived the Appellate Review Committee and the Governing Board."

¶16 The Appellate Review Committee is only required to consider the hearing officer's report; it is not bound by it in any way. And Hourani did not present any evidence that he has suffered any prejudice from the hearing officer's failure to recommend a sanction. Therefore, particularly in the absence of any timely objection by Hourani, we do not find that, as a matter of law, the hearing officer's failure to make a recommendation invalidates the proceeding.

¶17 The court next found that the peer review process was procedurally flawed because Dr. Andrew Mayberry was appointed to the Appellate Review Committee as the practitioner peer. The Hospital's bylaws require that the Appellate Review Committee be composed of three members, two members of the Governing Board and one practitioner

But, as Hourani notes, the Hospital did not argue Hourani's waiver before the superior court. On appeal from summary judgment, an appellant may not advance new theories or raise new issues to secure reversal. *Mitchell v. Gamble*, 207 Ariz. 364, ¶ 16, 86 P.3d 944, 949-50 (App. 2004). We therefore will not consider Hourani's arguments waived.

9

peer. The bylaws further provide that the practitioner peer "shall not be in direct economic competition with the affected Practitioner and shall be a peer of the Practitioner in a similar specialty under similar circumstances."

¶18 The court noted that the record was not clear as to what Mayberry's specialty is. Nevertheless, the court determined that, in order to qualify as a peer "in a similar specialty under similar circumstances," Mayberry had to be in direct economic competition with Hourani. Based on this analysis, the court concluded that Mayberry did not qualify as a practitioner peer under the Hospital's bylaws and was ineligible to serve on the Appellate Review Committee.

¶19 The requirement that Mayberry have a "similar specialty" does not logically mean that he must practice emergency medicine or be in direct economic competition with Hourani. He could be in a similar specialty, satisfying the second criterion, without being in direct economic competition with Hourani, which would violate the first criterion. Furthermore, the record shows that Hourani was a contract physician employed by EmCare, Inc., whereas Mayberry was employed by Benson Hospital. And nothing in the record requires the conclusion that these two physicians competed for the same patients. Construing the facts and all reasonable inferences against Hourani, *see Link*, 193 Ariz. 336, ¶ 12, 972 P.2d at 673, we find that a question of fact exists on whether Mayberry was in direct economic competition with Hourani. *See Pariser v. Christian Health Care Sys., Inc.*, 816 F.2d 1248, 1251 (8th Cir. 1987) (fact that executive committee member was only other

10

internal medical specialist in area insufficient to show "sufficient economic competition" in peer review process).

¶20      The court also found as a procedural flaw that Andrew Mayberry had served on both the Executive Committee and the Appellate Review Committee, noting that "it is implicit in the very nature of 'appellate review' that the review be made by an impartial officer or group" and that "no one can be truly impartial in reviewing his or her own actions." In essence, the court found that, as a matter of law, Mayberry's participation in the Executive Committee's investigation of Hourani's actions disqualified him from later adjudicating this action on the Appellate Review Committee. But the Hospital's bylaws contain no prohibition against a member of the Executive Committee serving on the Appellate Review Committee. Therefore, Mayberry was only disqualified if his presence on both committees deprived Hourani of due process.[3] *See Holmes v. Hoemako Hosp.*, 117 Ariz. 403, 405, 573 P.2d 477, 479 (1977); *Bock v. John C. Lincoln Hosp.*, 145 Ariz. 432,

_____

[3]Although the Hospital does not dispute that Hourani was entitled to due process, we do not necessarily agree that the concept of constitutional due process applies to this situation. Other jurisdictions have also questioned this proposition. *See Pariser v. Christian Health Care Sys., Inc.*, 816 F.2d 1248, 1251 (8th Cir. 1987); *Modaber v. Culpeper Mem'l Hosp., Inc.*, 674 F.2d 1023, 1026 (4th Cir. 1982); *Campbell v. St. Mary's Hosp.*, 252 N.W.2d 581, 585-86 (Minn. 1977); *Ritterband v. Axelrod*, 562 N.Y.S.2d 605, 608 (N.Y. Sup. Ct. 1990). Nevertheless, the parties have argued this issue as one of due process and we evaluate their positions with that constraint. Moreover, the bylaws are a contract. *Samaritan Health Sys. v. Superior Court*, 194 Ariz. 284, ¶ 12, 981 P.2d 584, 588 (App. 1998). Accordingly, the Hospital must comply with the covenant of good faith and fair dealing implied in every contract. *See Kuehn v. Stanley*, 208 Ariz. 124, ¶ 29, 91 P.3d 346, 354 (App. 2004).

433, 702 P.2d 253, 254 (App. 1985) (hospital privilege actions reviewed for fundamental due process violation).

¶21    Due process of law contemplates a "'fair trial in a fair tribunal.'" *United States v. Superior Court*, 144 Ariz. 265, 280, 697 P.2d 658, 673 (1985), *quoting In re Murchison*, 349 U.S. 133, 136, 75 S. Ct. 623, 625, 99 L. Ed. 942, 946 (1955). All decision makers, judges and administrative tribunals alike, are entitled to a presumption of "honesty and integrity." *Pavlik*, 195 Ariz. 148, ¶ 24, 985 P.2d at 639. When confronted with the dual roles held by an administrative fact-finder in an analogous situation, the United States Supreme Court held in *Withrow v. Larkin*, 421 U.S. 35, 58, 95 S. Ct. 1456, 1470, 43 L. Ed. 2d 712, 730 (1975), that "the combination of investigative and adjudicative functions does not, without more, constitute a due process violation" by creating an unconstitutional risk of bias. Citing *Withrow*, Division One of this court subsequently held that, when an administrative agency has both investigative and adjudicative responsibilities, "it will be necessary for the agency to receive the results of investigations, to make preliminary decisions or approve the filing of formal charges, and then to participate in the resulting hearings. This type of procedure does not violate due process of law." *DeGroot v. Ariz. Racing Comm'n*, 141 Ariz. 331, 341, 686 P.2d 1301, 1311 (App. 1984); *see also Duffield v. Charleston Area Med. Ctr., Inc.*, 503 F.2d 512, 519 (4th Cir. 1974) (action of investigatory committee was "administrative step in bringing the issue to a head" that did not disqualify that committee's members from sitting on adjudicatory committee); *Leonard v. Bd. of Dirs., Prowers County Hosp. Dist.*, 673 P.2d 1019, 1024-25 (Colo. Ct. App. 1983);

12

*accord In re Crooks*, 800 P.2d 898, 904 (Cal. 1990); *In re Zoarski*, 632 A.2d 1114, 1121 (Conn. 1993). Accordingly, the fact that Mayberry initially served on the committee that recommended revocation of Hourani's privileges is insufficient, in and of itself, to disqualify Mayberry from later reviewing that action on appeal.

¶22 Hourani argues that these cases are distinguishable because Mayberry sat on both the Executive Committee that decided to bring charges and the Appellate Review Committee that reviewed the Executive Committee's decision. But the principles announced in *Withrow* and *DeGroot* apply equally here. Because the Governing Board was the final decision-maker in revoking Hourani's privileges, the fact that the prior proceeding was termed "appellate" is of no import, as it was merely preliminary to the Governing Board's final decision.

¶23 Nevertheless, a plaintiff may challenge a decision maker's impartiality by "demonstrat[ing] that the mind of the decision maker is 'irrevocably closed' on the particular issues being decided." *Havasu Heights Ranch & Dev. Corp. v. Desert Valley Wood Prods., Inc.*, 167 Ariz. 383, 387, 807 P.2d 1119, 1123 (App. 1990), *citing Fed. Trade Comm'n v. Cement Inst.*, 333 U.S. 683, 701, 68 S. Ct. 793, 803, 92 L. Ed. 1010, 1034 (1948). However, "mere exposure to evidence presented in nonadversary investigative procedures is insufficient in itself to impugn the fairness of the [decision maker] at a later adversary hearing." *Withrow*, 421 U.S. at 55, 95 S. Ct. at 1468, 43 L. Ed. 2d at 728. To be successful, a plaintiff must show that any bias or predetermination of the facts is based on an "extrajudical source" that results in a decision based on something other than what the

13

decision maker learned from participating in the case. *United States v. Grinnell Corp.*, 384 U.S. 563, 583, 86 S. Ct. 1698, 1710, 16 L. Ed. 2d 778, 793 (1966); *see also Havasu Heights*, 167 Ariz. at 387, 807 P.2d at 1123.

¶24 Hourani did not present any evidence that Mayberry had received information from an "extrajudicial source" or was unable to fairly evaluate the findings by the hearing officer and discuss the matter with other members of the Appellate Review Committee in deciding what sanction to impose. Therefore, Hourani failed to overcome the presumption of Mayberry's "honesty and integrity." *Pavlik*, 195 Ariz. 148, ¶ 24, 985 P.2d at 639. Construing the facts and reasonable inferences therefrom in the light most favorable to the Hospital, *see Link*, 193 Ariz. 336, ¶ 12, 972 P.2d at 673, we cannot conclude that Mayberry's presence on the Appellate Review Committee denied Hourani the right to a fair hearing.

¶25 In a supplemental citation of authority, Hourani relies on two cases to support his claim that Mayberry should have been disqualified. Hourani first cites *Yaqub v. Salinas Valley Memorial Healthcare System*, 18 Cal. Rptr. 3d 780, 788 (App. 2004), for the proposition that, when individuals serve on both an appellate review body as well as the panel that makes the initial decision, such action "strain[s] the bounds of due process." But, in *Yaqub*, the court invalidated the revocation of privileges because the hearing officer had an actual financial bias that disqualified him. The court then warned that, in any future hearing that might occur in which neither side had counsel, the attorney who had advised the panel in its investigative endeavors should be precluded from also advising the board in

14

its adjudicative duties. We find this dictum both inapplicable to the situation here and unpersuasive.

¶26    Hourani also cites *Yaqub* for the proposition that a disciplinary panel member should be precluded from "sitting on [an appellate] panel and reviewing its own decision made in a previous hearing." *Id.* at 789. But the court made this statement in the context of quoting the trial court's reasoning for rejecting the argument raised under a California statute, which prohibited individuals from serving dual roles. Accordingly, we find *Yaqub* inapplicable to this case.

¶27    Hourani's second supplemental citation of authority is an unpublished district court opinion from Louisiana. Other than two exceptions that do not apply to this case, unpublished decisions "shall not be regarded as precedent nor cited in any court." Ariz. R. Civ. App. P. 28(c), 17B A.R.S. This prohibition extends to federal district court memorandum decisions. *See Walden Books Co. v. Dep't of Revenue*, 198 Ariz. 584, ¶ 21, 12 P.3d 809, 814 (App. 2000) (rule prohibiting citation of memorandum decisions applies to memorandum decisions by any court). We therefore refuse to consider it.

¶28    Finally, the court found that Dr. Carter Mayberry[4] should have recused himself from "any voice or vote" on the Governing Board when it voted to revoke Hourani's privileges. The court's ruling is unclear as to why Carter Mayberry should have recused himself, but Hourani defends the decision based on Mayberry's participation as a member of the Executive Committee. Again, the bylaws do not prohibit a member from serving on

---

[4]Carter Mayberry is the brother of Andrew Mayberry.

15

both the Executive Committee and the Governing Board.  And Hourani did not present any evidence that Mayberry's participation on the Executive Committee "irrevocably closed" his mind on whether the Governing Board should revoke Hourani's privileges. *Havasu Heights*, 167 Ariz. at 387, 807 P.2d at 1123.  Accordingly, we are unable to conclude as a matter of law that Carter Mayberry's failure to recuse himself violated Hourani's fair hearing rights.

## DISPOSITION

**¶29**     We affirm the superior court's denial of the Hospital's cross-motion for summary judgment.  But, because we find as a matter of law that the unchallenged lack of a recommendation from the hearing officer was insufficient to invalidate the process and that questions of material fact exist on whether other procedural violations occurred during Hourani's revocation proceedings, we reverse the judgment on this issue and remand this matter to the superior court for further proceedings.


_____
JOSEPH W. HOWARD, Presiding Judge


CONCURRING:


_____
J. WILLIAM BRAMMER, JR., Judge


_____
PETER J. ECKERSTROM, Judge

16