111 P.3d 1042

**Susan ZIEMAK, a single woman, Plaintiff/Appellant,**

**v.**

**Larry SCHNAKENBERG, a single man, Defendant/Appellee.**

No. 2 CA–CV 2004–0088.

Court of Appeals of Arizona, Division 2, Department A.

May 31, 2005.

Schwanbeck & Present, P.L.L.C., By Victor R. Schwanbeck, Tucson, for Plaintiff/Appellant.

DeConcini McDonald Yetwin & Lacy, P.C., By Lisa Anne Smith, Tucson, for Defendant/Appellee.

## OPINION

ECKERSTROM, J.

¶ 1 Plaintiff/appellant Susan Ziemak appeals the trial court's award of attorney fees and costs in favor of defendant/appellee, Larry Schnakenberg. She maintains that the trial court erred when it denied her motion for additur and declined to include jury fees and prejudgment interest in her trial judgment which, as a result, fell short of exceeding her arbitration award by twenty-five percent pursuant to A.R.S. § 12–133(I) and Rule 76, Ariz. R. Civ. P., 16 A.R.S., Pt. 2. We hold that the trial court did not err when it declined to consider jury fees in that calculation, and we affirm the trial court's denial of Ziemak's motion for additur. However, we conclude that the trial court should have awarded Ziemak prejudgment interest and included that total in the judgment for the purposes of comparing the judgment to the arbitration award.

### Factual and Procedural History

¶ 2 We construe the facts "in the light most favorable to upholding the jury's verdicts." *Crackel v. Allstate Ins. Co.*, 208 Ariz. 252, ¶ 3, 92 P.3d 882, 885 (App.2004). Schnakenberg began providing Ziemak with financial services and advice in the mid-1980s. In so doing, he acted as her health insurance agent, acquiring her first policy in 1992 or 1993. Rising premium costs prompted Ziemak to change insurance carriers a number of times; each time, Schnakenberg acted as her agent.

¶ 3 In July 2001, Ziemak received a letter from Conseco, her health insurance carrier at the time, notifying her that her coverage would end in February 2002. The letter also stated: "We encourage you to contact your agent for assistance in securing coverage through another carrier. Even if you have difficulty in obtaining replacement coverage, your agent is best suited to review the range of alternatives available to you at this time."

¶ 4 Ziemak testified that she gave the letter to Schnakenberg, who told her that he would "contact Conseco and get back to [her]." A few days later, according to Ziemak, Schnakenberg informed her that Conseco would not cancel her coverage until she acquired another policy. Ziemak and Schnakenberg then discussed other health insurance options, and Schnakenberg helped Ziemak apply for coverage with another carrier. However, the new carrier informed Ziemak that she would not be eligible for coverage until April or May 2002. She continued to make monthly premium payments to Conseco through February 2002.

¶ 5 That month, Ziemak was thrown from a horse. When she sought coverage for her injuries from Conseco, she discovered that Conseco had canceled her policy before the incident. She underwent knee surgery and her medical costs totaled over twenty thousand dollars. Ziemak ultimately paid $14,752.54 after negotiating with her various health care providers.

¶ 6 In August 2002, Ziemak filed a complaint against Schnakenberg, alleging negligence, breach of contract, negligent misrepresentation, and fraud. Most of the claims were substantively based on Schnakenberg's alleged statements that, until Ziemak secured alternative health insurance coverage, Conseco would not cancel her policy. She sought damages for her medical expenses, attorney fees and costs, and interest on any amount recovered for medical expenses.

¶ 7 The parties submitted the case for compulsory arbitration. Based on the uncontested facts presented at the arbitration, the

arbitrator determined Schnakenberg had been fifty-five percent at fault and awarded Ziemak $7,370 in damages and $559.55 in costs.

¶ 8 Ziemak appealed from the arbitration award. After a two-day trial, the jury found Ziemak's "full damages" totaled $13,150.50 and that Schnakenberg had been seventy percent at fault, resulting in a net verdict of $9,205.25 in Ziemak's favor. Ziemak submitted a form of judgment that did not include prejudgment interest. The court then entered an initial judgment awarding her $9,205.25 and $509.29 against Schnakenberg for jury fees. Thereafter, Schnakenberg requested $16,309.40 in attorney fees and $566.35 in costs pursuant to A.R.S. § 12–133 and Rule 76(f), Ariz. R. Civ. P., 16 A.R.S., Pt. 2, on the ground that the judgment, excluding jury fees, did not exceed the arbitration award by twenty-five percent.

¶ 9 Ziemak filed a motion for additur, claiming that the jury's verdict had not adequately compensated her for medical expenses based on the evidence presented and that the court should award her an additional $1,600. Ziemak also argued that she was entitled to prejudgment interest on her liquidated damages and that as the prevailing party, she, rather than Schnakenberg, was entitled to recover her court costs. Finally, Ziemak challenged Schnakenberg's claim for attorney fees on the ground that, properly calculated, her judgment exceeded the arbitration award by twenty-five percent.

¶ 10 The trial court declined to consider Ziemak's argument that she was entitled to prejudgment interest on the ground that she had raised it for the first time in her reply on the motion for additur. The court also rejected Ziemak's motion for additur but modified the award to Ziemak by including $611.55 in costs not reflected in the initial judgment to Ziemak. It then concluded that Ziemak still had not exceeded the arbitration award by twenty-five percent and entered a final judgment, which required Ziemak to pay Schnakenberg $16,309.40 in attorney fees and $566.35 in costs pursuant to § 12–133. After subtracting the amount of Ziemak's trial verdict from Schnakenberg's attorney fees and costs, the court entered a final

judgment in the net amount of $7,670.50 in favor of Schnakenberg. Ziemak filed this timely appeal.

## Discussion

**1. Was Ziemak's "judgment on trial de novo" at least twenty-five percent more favorable than the arbitration award?**

¶ 11 Section 12–133(I) provides that if, on appeal from arbitration, "the judgment on trial de novo is not at least twenty-five percent more favorable than the monetary relief ... granted by the arbitration award," the appellant must pay the appellee's "costs taxable in any civil action and reasonable attorney fees." *See* Ariz. R. Civ. P. 76(f) (same). Here, the trial court correctly concluded that Ziemak's judgment would have to exceed $9,911.94—twenty-five percent more than the arbitration award (including the damage award and costs)—in order for her to avoid paying Schnakenberg's attorney fees. The portion of the final judgment in favor of Ziemak, which included the jury's award of $9,205.25 and $611.55 in costs, but neither jury fees nor prejudgment interest, fell $95 short of the twenty-five percent threshold.

¶ 12 On appeal, Ziemak argues that the total amount of a judgment for purposes of § 12–133 includes jury fees and prejudgment interest on her liquidated damages. She contends if either of those amounts had been included in the judgment, the final sum would have been twenty-five percent more favorable than the arbitration award and, therefore, she should not have been obligated to pay Schnakenberg's attorney fees and taxable costs.

### A. Jury fees

█ ¶ 13 We first consider whether a judgment entered after a trial *de novo* includes jury fees for purposes of § 12–133 and Rule 76(f), Ariz. R. Civ. P. Because this issue requires us to interpret and apply both a statute and a court rule, our review is *de novo*. *See North Valley Emergency Specialists, L.L.C. v. Santana,* 208 Ariz. 301, ¶ 8, 93 P.3d 501, 503 (2004) (statute); *Perguson v.*

*Tamis,* 188 Ariz. 425, 427, 937 P.2d 347, 349 (App.1996) (rule).[1]

¶ 14 The primary objective of statutory interpretation is to give effect to the legislature's intent. *Martineau v. Maricopa County,* 207 Ariz. 332, ¶ 9, 86 P.3d 912, 914 (App.2004). "We begin our analysis with the plain language of the pertinent statute because a statute's plain language provides the best evidence of intent." *Id.* (citation omitted). Only if a statute is ambiguous will this court "consider 'the statute's context, subject matter, historical background, effects and consequences, and spirit and purpose'" to determine the legislative intent. *Aros v. Beneficial Ariz., Inc.,* 194 Ariz. 62, 66, 977 P.2d 784, 788 (1999), *quoting Zamora v. Reinstein,* 185 Ariz. 272, 275, 915 P.2d 1227, 1230 (1996).

█ ¶ 15 Preliminarily, we must determine whether the legislature intended the phrase, "judgment on trial de novo," as used in § 12–133(I), to include jury fees. As Ziemak emphasizes, the legislature has specifically indicated in another provision that jury fees must be included in the judgment. *See* A.R.S. § 12–332(B) ("A jury fee shall ... be included in the judgment and taxed as costs ....."). But the language of § 12–133(I) requires more than a rote mathematical comparison between the components of the judgment and the arbitration award. Rather, the party appealing an arbitration award escapes sanction only by acquiring a judgment "twenty-five per cent *more favorable*" than the award. *Id.* (Emphasis added). And, when interpreting a statute, "'we must read the statute as a whole and give meaningful operation to each of its provisions.'" *Herman v. City of Tucson,* 197 Ariz. 430, ¶ 14, 4 P.3d 973, 977 (App.1999), *quoting Ruiz v. Hull,* 191 Ariz. 441, ¶ 35, 957 P.2d 984, 993 (1998). Because jury fees are not awarded to the prevailing party but rather must be paid to the court by the nonprevailing litigant, *see* § 12–332(B), those fees do not render the

judgment "more favorable" to the prevailing party. Accordingly, although the trial judgment here including jury fees was mathematically greater than the arbitration award by twenty-five percent, it was not twenty-five percent more favorable to Ziemak.

¶ 16 Ziemak maintains that we should read "more favorable" as synonymous with "greater than" because the legislature would have used the phrase "more favorable to the appellant" had it intended the meaning we ascribe to it. But even if Ziemak has provided a plausible alternative interpretation of the operative phrase, we must adopt the interpretation most consistent with the statute's subject matter and purpose. *See Aros,* 194 Ariz. at 66, 977 P.2d at 788.

¶ 17 Section 12–133 is designed to discourage litigants from appealing reasonable arbitration awards and to force them to carefully assess the likelihood of obtaining a significantly better result if they exercise their right to a jury trial. *See Vega v. Sullivan,* 199 Ariz. 504, ¶ 16, 19 P.3d 645, 650 (App. 2001) (purpose of arbitration provision is to " 'discourage appeals of reasonable arbitration awards' "), *quoting Farmers Ins. Co. v. Tallsalt,* 192 Ariz. 129, ¶ 8, 962 P.2d 203, 204 (1998). The amount of jury fees, which plays no role in the calculation of arbitration awards, has no conceivable relevance to the assessment of whether the litigant appealing that award has secured a significantly better result by proceeding to trial. *See Hales v. Humana of Ariz., Inc.,* 186 Ariz. 375, 378, 923 P.2d 841, 844 (App.1996) (comparison of judgment to offer of judgment requires " 'apples to apples' comparison"). Were we to adopt the interpretation suggested by Ziemak, a litigant appealing a small arbitration award could avoid the sanctions set forth in § 12–133 even though the party received a jury verdict no better than the award, a result that is contrary to the purpose of the statute.[2] For the above reasons, we conclude

---

1. We review this issue based only on § 12–133 because Rule 76, Ariz. R. Civ. P., parrots the language of § 12–133, and resolution of this issue based on statutory interpretation alone is sufficient.

2. In a case where the arbitration award is $2,000 or less, the jury fee award here, $509, would,

standing alone, account for a twenty-five percent more favorable result. Likewise, in the instant case, wherein Ziemak needed to exceed an arbitration award by $1,982.39 to avoid § 12–133 sanctions, the jury fees would have accounted for over a quarter of that amount.

that jury fees, while part of the judgment, should not be included in the calculation to determine whether the litigant appealing an arbitration award received a trial result twenty-five percent more favorable than the award.

## B. Prejudgment interest

¶ 18 We next address whether the trial court erred because it did not consider Ziemak's claim for prejudgment interest and whether that amount should have been included in the judgment under § 12–133 had it done so. Relying on *Gemstar Ltd. v. Ernst & Young*, 185 Ariz. 493, 508, 917 P.2d 222, 237 (1996), Ziemak asserts that she is entitled to prejudgment interest as a matter of right because her damages were "liquidated." But Schnakenberg maintains that Ziemak had waived her right to prejudgment interest by failing to specifically request it in the form of judgment she submitted after prevailing at trial and by failing to properly seek an amendment to that form of judgment pursuant to Rule 59, Ariz. R. Civ. P., 16 A.R.S., Pt. 2.

██ ¶ 19 Although Ziemak made a request for prejudgment interest in a timely fashion, she did so only in a reply on her motion for additur filed pursuant to Rule 59.[3] The trial court declined to consider the request for prejudgment interest because it had not been presented in the correct procedural form. *See* Ariz. R. Civ. P. 7.1(a), 16 A.R.S., Pt. 1 (prohibiting raising new matter in a reply). We review the trial court's decision to reject Ziemak's request for prejudgment interest on procedural grounds for an abuse of discretion. *See Arnold v. Van Ornum*, 4 Ariz.App. 89, 91, 417 P.2d 723, 725 (1966).

¶ 20 We cannot fault the trial court for enforcing the procedural requirements set forth in Rule 7.1(a) for the proper filing of motions, and we are cognizant that Rule 7.1(b) authorizes a court to decide an issue adversely to the movant who has failed to properly raise it. But a trial court may abuse its discretion even in choosing an available sanction for a party's procedural misstep

under the specific circumstances of a given case. *See Walker v. Kendig*, 107 Ariz. 510, 511, 513, 489 P.2d 849, 850, 852 (1971) (abuse of discretion to dismiss for plaintiff's failure to set for trial within court imposed deadlines); *Zimmerman v. Shakman*, 204 Ariz. 231, ¶¶ 21, 23, 62 P.3d 976, 982 (App.2003) (abuse of discretion to grant motion in limine based on party's failure to respond); *Wayne Cook Enters., Inc. v. Fain Props. Ltd. P'ship*, 196 Ariz. 146, ¶ 14, 993 P.2d 1110, 1113 (App.1999) (abuse of discretion to dismiss as sanction for late disclosure); *Perguson v. Tamis*, 188 Ariz. 425, 429–30, 937 P.2d 347, 351–52 (App.1996) (abuse of discretion to preclude testimony of expert witness for disclosure violation).

¶ 21 In the context of addressing appropriate sanctions for violations of procedural rules for civil litigation, our supreme court has encouraged trial courts to apply those rules so as "to maximize the likelihood of a decision on the merits." *Allstate Ins. Co. v. O'Toole*, 182 Ariz. 284, 287, 896 P.2d 254, 257 (1995); *Walker*, 107 Ariz. at 513, 489 P.2d at 852 ("[T]he interests of justice are best served by a trial on the merits."). It has observed that such rules were not designed to be an "arsenal of technicalities" through which "legal rights should automatically be forfeited on the basis of harmless human failings." *Allstate*, 182 Ariz. at 287, 896 P.2d at 257.

¶ 22 Consistent with this philosophy, Arizona courts repeatedly have found an abuse of discretion in cases where the trial court chose a sanction that had the effect of resolving the lawsuit adversely to the violating party when the policy supporting the rule could have been vindicated by a less severe sanction. *See, e.g., Walker*, 107 Ariz. at 513, 489 P.2d at 852 (abuse of discretion to dismiss case when less severe sanction was available); *Wayne Cook Enters.*, 196 Ariz. 146, ¶¶ 12–14, 993 P.2d at 1113 (abuse of discretion to dismiss case as sanction for late disclosure when court failed to consider and reject lesser sanctions); *see also Perguson*, 188 Ariz. at 429, 937 P.2d at 351 (abuse

---

3. Ziemak filed the reply within fifteen days of the entry of judgment. *See* Ariz. R. Civ. P. 59(1) (requiring that a motion to alter or amend the judgment be filed within fifteen days after entry of judgment).

of discretion to preclude expert witness when "ruling essentially terminated the litigation" and procedural violation not motivated by effort to gain unfair tactical advantage). Although we find no case authority that addresses the appropriate sanction for the specific procedural oversight here, we have applied the above principles in the context of an analogous sanction imposed pursuant to Rule 7.1(b). In *Zimmerman,* the trial court granted the defendant's motion in limine as a sanction pursuant to Rule 7.1(b) for the plaintiff's failure to properly respond to that motion as required by Rule 7.1(a). 204 Ariz. 231, ¶¶ 20–23, 62 P.3d at 982. Under the circumstances of that case, we found an abuse of discretion because "the plain effect of the court's order was to bar recovery" and the court had failed to consider lesser sanctions. *Id.*

¶ 23 In conformity with the above criteria, we conclude the trial court abused its discretion when it refused to consider Ziemak's procedurally flawed request for prejudgment interest. Preliminarily, we observe that Ziemak would have been entitled to receive prejudgment interest on her claim had the trial court considered her request for it. In Arizona, "prejudgment interest on a liquidated claim is a matter of right." *La Paz County v. Yuma County,* 153 Ariz. 162, 168, 735 P.2d 772, 778 (1987); *Ry–Tan Const. v. Washington Elementary Sch. Dist. No. 6,* 208 Ariz. 379, ¶ 88, 93 P.3d 1095, 1120 (App. 2004). "A claim is liquidated if the plaintiff provides a basis for precisely calculating the amounts owed," whether it sounds in contract or tort. *Id.; see also* Daniel J. McAuliffe & Shirley J. Wahl, *Arizona Civil Trial Practice* § 11.19 (2001) ("A claim is liquidated when there is data which makes it possible to compute the exact amount without relying upon opinion or discretion."). Ziemak's claim was liquidated because it was based entirely on the costs of her medical treatment, which had been concluded and for which she had paid well before trial. *See Paul R. Peterson Const., Inc. v. Ariz. State Carpenters Health and Welfare Trust Fund,* 179 Ariz. 474, 484–85, 880 P.2d 694, 704–05 (App.1994) (liquidated claim derived from medical expenses incurred by plaintiff). Thus, Ziemak's request for prejudgment interest, while procedurally flawed, was meritorious in its content.[4]

¶ 24 Second, the trial court's refusal to consider Ziemak's request for prejudgment interest had the ultimate effect of denying Ziemak relief on her lawsuit. As discussed below, any prejudgment interest should have been included in the judgment and considered in the determination of whether Ziemak adequately had exceeded the arbitration award so as to avoid sanctions pursuant to § 12–133. Had that amount been included here, Ziemak would have comfortably exceeded the arbitration award by more than twenty-five percent.[5] Because Schnakenberg's attorney fees and costs almost doubled the amount of the jury's verdict in Ziemak's favor, the trial court's refusal to consider Ziemak's otherwise meritorious request for prejudgment interest had the effect of not only denying Ziemak any relief on her lawsuit, but it also resulted in a comparatively substantial judgment against her. Under the unique circumstances of this case, the trial court's refusal to consider her request was even more harsh than a dismissal order.

¶ 25 Third, the trial court had other options by which it could have vindicated the purpose of the procedural rule violated by Ziemak. Schnakenberg complains that he was prejudiced by Ziemak's request for prejudgment interest in the reply because he had no procedural opportunity to respond. Presumably, Rule 7.1(a) prohibits a party from raising a new issue in a reply for precisely that reason. However, no provision in Rule 7.1(a) would have prevented the trial

---

4. To her credit, Schnakenberg's counsel conceded during her skilled oral presentation to this court that Ziemak was lawfully entitled to prejudgment interest had she appropriately asked for it. Ziemak's counsel also displayed commendable candor by conceding that he failed to request prejudgment interest in his form of judgment simply because he "forgot."

5. Ziemak sought prejudgment interest in the amount of $1,601.91 and included her precise calculation of that amount in her request. Although Schnakenberg challenges Ziemak's right to receive such interest on procedural grounds, he has not disputed the amount either before the trial court or on appeal.

court from treating Ziemak's flawed request as a new motion and granting Schnakenberg the opportunity to respond. Thereby, the trial court could have both vindicated the purpose served by the relevant provision of Rule 7.1(a) and accommodated the competing policy of resolving this pivotal issue on its merits. *See Gerow v. Covill*, 192 Ariz. 9, ¶¶ 42–43, 960 P.2d 55, 64 (App.1998) (no abuse of discretion for trial court to decline sanctions for late disclosure when purpose of Rule 26.1, Ariz. R. Civ. P., 16 A.R.S., Pt. 1, fulfilled).

¶ 26 Furthermore, both our case law and Arizona's rules of civil procedure discourage the technical procedural forfeiture of a litigant's entitlement to prejudgment interest. Rule 54(d), Ariz. R. Civ. P., 16 A.R.S., Pt. 2, for example, provides that "[e]xcept as to a party against whom a judgment is entered by default, every final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in the party's pleadings." Consistent with that rule, Arizona courts repeatedly have held that "the prevailing party is entitled to recover prejudgment interest on a liquidated claim even if interest is not specifically requested in the complaint." *Employer's Mut. Cas. Co. v. McKeon*, 170 Ariz. 75, 78, 821 P.2d 766, 769 (App.1991); *see England v. Valley Nat'l Bank of Phoenix*, 94 Ariz. 267, 269, 383 P.2d 183, 184 (1963); *Ariz. Title Ins. & Trust Co. v. O'Malley Lumber Co.*, 14 Ariz.App. 486, 495, 484 P.2d 639, 648 (1971). We can think of no reason why litigants should be allowed to recover prejudgment interest after failing to seek it in their pleadings at all, but be barred from receiving it merely because they have neglected to request it in the appropriate procedural form.[6] For the foregoing reasons, under the specific circumstances of this case, we conclude that the trial court abused its discretion when it declined to consider Ziemak's timely request for prejudgment interest and include that interest in the judgment.

¶ 27 Next, Ziemak argues that because she was entitled to prejudgment interest, it should also have been included in the judg-

ment for the purposes of determining whether that judgment exceeded the arbitration award by twenty-five percent. Neither the applicable statutes nor Rule 76(f), Ariz. R. Civ. P., directly or implicitly address this question.

■ ¶ 28 In *Vega v. Sullivan*, 199 Ariz. 504, 19 P.3d 645 (App.2001), however, this court addressed the analogous question of whether the judgment, for purposes of § 12–133 and Rule 76(f), includes costs. There, we observed that the term "judgment," as understood in the context of civil procedure, constituted "'a decree and an order from which an appeal lies,'" *Vega*, 199 Ariz. 504, ¶ 10, 19 P.3d at 648, *quoting* Rule 54(a), Ariz. R. Civ. P., and implicitly concluded that all of the components of a judgment should be included in the comparison of the judgment to the arbitration award. *Id.* ¶¶ 10–12 (Neither Rule 76(f) nor any related provisions "permit[ ] a portion of the judgment to be ignored for the purposes of comparison to the arbitration award."). An obligation by one party to pay prejudgment interest to another is a necessary and predictable component of any judgment that attempts to set forth the final financial liabilities of the respective parties and fully determine the controversy at hand. *See Wolf Corp. v. Louis*, 11 Ariz.App. 352, 355, 464 P.2d 672, 675 (1970) ("The word 'judgment' is commonly understood to mean the act of a court which fixes clearly the rights and liabilities of the respective parties to litigation and determines the controversy at hand."); *see also Peterson Const.*, 179 Ariz. at 486, 880 P.2d at 706 (modifying a judgment so as to include prejudgment interest). Accordingly, we conclude that the term judgment for purposes of § 12–133 and Rule 76(f) includes any prejudgment interest accrued and awarded on the prevailing party's liquidated damages.

¶ 29 Schnakenberg argues that this result would violate the public policy underlying § 12–133 and Rule 76(f) because litigants could strategically increase their chances of exceeding the arbitration award by seeking prejudgment interest only at the time of trial. And, as Schnakenberg notes, Ziemak

---

6. Ziemak specifically requested prejudgment in- terest in her complaint.

did not receive prejudgment interest on her liquidated claim at the time of arbitration but only sought it as a part of her judgment after trial. Moreover, even when plaintiffs seek and receive prejudgment interest in arbitration, the amount of prejudgment interest would increase by the time of trial due to the mere passage of time—creating a potential incentive for plaintiffs to delay the trial date when they have appealed an arbitration award.

¶ 30 Although Schnakenberg's policy argument is logical, we can find no evidence that the legislature or the supreme court had this reasoning and these policy considerations in mind when drafting § 12–133 and Rule 76(f) respectively. To the contrary, we must presume that they would have expressly excluded prejudgment interest from the definition of judgment had they intended to deviate from the traditional meaning of that term. See Vega, 199 Ariz. 504, ¶ 12, 19 P.3d at 649 ("Had the drafters ... intended a comparison of only the jury verdict to the arbitrator's award, without consideration of taxable costs, they presumably would have said so.").

¶ 31 Nor can we engraft upon the statute or the rule our own notions of public policy without invading the province of those entrusted with the power to draft such provisions. See id., 199 Ariz. 504, ¶ 8, 19 P.3d at 648 (" 'Courts are not at liberty to impose their views of the way things ought to be simply because that's what must have been intended[;] otherwise no statute ... no matter how explicit, could be saved from judicial tinkering.' "), quoting Kilpatrick v. Superior Court, 105 Ariz. 413, 422, 466 P.2d 18, 27 (1970); see also Bergeron ex rel. Perez v. O'Neil, 205 Ariz. 640, ¶ 37, 74 P.3d 952, 964 (App.2003) (noting that "[i]t is not our domain to render any judgment on the merits" of policy arguments regarding wisdom of rule drafted by supreme court); Phoenix Newspapers, Inc. v. Purcell, 187 Ariz. 74, 79, 927 P.2d 340, 345 (App.1996) (We do not " 'sit as a super-legislature to determine the wisdom,

the necessity, or the inconvenience of a legislative enactment.' "), quoting Shaw v. State, 8 Ariz.App. 447, 452, 447 P.2d 262, 267 (1968). Indeed, the legislature and the supreme court may well have specifically contemplated that prejudgment interest would necessarily be included in the definition of a judgment, but, in the interests of simplicity, may have chosen not to separately parse every conceivable component of a judgment in the statute and parallel rule.

¶ 32 Finally, unlike jury fees which are paid to the state, the claimant is entitled to collect prejudgment interest—a fact which renders that portion of the judgment "more favorable" to the claimant party. See § 12–133(I). Thus, we hold that any prejudgment interest must be included when calculating the amount of the judgment for purposes of comparing that judgment to an arbitration award pursuant to § 12–133(I) and Rule 76(f).[7]

**2. Was the jury's calculation of Ziemak's damages improper?**

¶ 33 Ziemak next contends that the jury miscalculated her damages and that the trial court erred when it denied her motion for additur to conform the award to the evidence she had presented at trial. "[T]he question of additur is left to the greatest possible discretion of the trial court, and its decision will not be disturbed on appeal except for a case of clear abuse." Bustamante v. City of Tucson, 145 Ariz. 365, 366, 701 P.2d 861, 862 (App.1985).

¶ 34 Ziemak presented evidence that she had paid $14,752.54 for medical expenses. The jury awarded her only $13,150.50 before reducing the award to conform to its findings of relative degrees of fault. In its January 30, 2004, minute entry (signed on August 17, 2004) denying her motion for additur, the trial court concluded that the reduced award had been based upon the jury's findings that, even if Ziemak had been insured under the

7. Our resolution of this issue results in the conclusion that Ziemak's trial judgment exceeded the arbitration award by twenty-five percent. Accordingly, we need not address which litigant should be characterized as the prevailing party pursuant to A.R.S. § 12–341 when the plaintiff

receives a jury verdict imposing liability on the defendant but when the defendant is entitled to fees and costs pursuant to Rule 76(f) that exceed the amount of the judgment in the plaintiff's favor.

Conseco policy at the time of the injury, she still would have incurred costs that were not covered, such as her deductible, prescription medications, and office copays. We cannot say that the trial court abused its discretion when it reached that conclusion.

¶ 35 Schnakenberg elicited testimony at trial suggesting that Ziemak would have had some out-of-pocket expenses regardless of whether she was covered by Conseco in February 2002. Other evidence was produced to corroborate the testimony. Because the amount of the jury verdict closely tracked the evidence that was presented, we cannot say that the trial court erred by assuming that the verdict reflected the jury's consideration of that evidence. Ultimately, "[t]he amount of damages for personal injury is a question particularly within the province of the jury." *Meyer v. Ricklick*, 99 Ariz. 355, 357, 409 P.2d 280, 281–82 (1965). And in considering an appeal on a motion for additur, our supreme court held in *Creamer v. Troiano*, 108 Ariz. 573, 576–77, 503 P.2d 794, 797–98 (1972), that "the trial judge should not interfere with what is peculiarly the

jury's function, and if he does not, we will nearly always uphold him ... [and] if the verdict is supported by adequate evidence, it will not be disturbed." Here, the verdict was supported by sufficient evidence. The trial court did not abuse its discretion when it denied Ziemak's motion for additur.

## Conclusion

¶ 36 We affirm the trial court's denial of Ziemak's motion for additur. We vacate the judgment entered in favor of Schnakenberg and instruct the court to enter judgment in favor of Ziemak to include prejudgment interest and her recoverable costs pursuant to A.R.S. § 12–341.

HOWARD, P.J. and ESPINOSA, J., concurring.